IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMMY MOZINGO**, *et al.* | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 15-529 |
| | : | |
| **OIL STATES ENERGY SERVICES,** | : | |
| **L.L.C.**, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                           **November 7, 2016**

Fifteen field service supervisors working as frac hands, grease operators, and crane operators at fracking sites sued their employer Oil States Energy Services, L.L.C. alleging failure to pay overtime under the Fair Labor Standards Act ("Act") and Pennsylvania's Minimum Wage Act. After discovery, both sides moved for summary judgment. The same facts and issues predominate all fifteen employees' job duties. We find genuine disputes of material facts precluding summary judgment.

Oil States argues its fifteen employees[1] are exempt employees under Act, Pennsylvania's Minimum Wage Act ("PMWA"), the Motor Carrier Act, and its Pennsylvania counterpart. Oil States argues the PMWA claims are pre-empted by the Federal Aviation Administration Authorization Act ("FAAA"). Oil States also argues employees' claims should be precluded because employees failed to offer evidence of hours worked. Oil States also seeks an offset if it misclassified employees, and a declaration Oil States' alleged violation is not willful.

Employees argue there is no genuine dispute of material fact and request we find Oil States liable to each employee for failing to pay overtime because no overtime exemptions apply. Employees argue: Oil States is not entitled to offset employees' unpaid overtime with their

previous earnings; they are entitled to liquidate damages because Oil States did not act in good faith; Oil States willfully misclassified employees so the statute of limitations is three years; and, Oil States must pay damages at a 1.5 multiplier under the Act and PMWA.[2]

There are genuine disputes of material fact regarding the scope and discretion of employees' job duties, including when and how they operated trucks. There are genuine disputes of material fact regarding Oil States' conduct in classifying the employees as non-exempt, employees' overtime hours, and whether Oil States is entitled to an offset of employees' overtime. Because we find genuine issues of material fact for all claims, we deny Oil States' motions as to each employee and the employees' joint motion. We find the issue of whether the FAAAA pre-empts employees' PMWA claims is possibly waived because Oil States failed to plead pre-emption as an affirmative defense.

## I. Analysis

### A. There are genuine disputes regarding exemptions under the Act and PMWA.

We find genuine disputes regarding the daily tasks of the fifteen employees. A clear agreement on the nature and frequency of employees' daily tasks is crucial for us to decide whether the fifteen employees "plainly and unmistakably" come under an exemption.[3] Whether an employee comes under an exemption determines if Oil States should have paid overtime to them. Oil States alleges all employees are exempt under the highly compensated employee exemption. Oil States argues one employee, Mr. Bolen, is exempt under the executive exemption and ten of the employees[4] are exempt under the "combination exemption." Oil States argues all employees are exempt under the PMWA because they are exempt under the Act's highly compensated exemption and/or the PMWA's administrative and executive exemptions.[5]

2

We analyze the highly compensated employee exemption and then the executive exemption because the genuine disputes of material facts regarding those two exemptions also preclude summary judgment on the combination exemption.

### 1. Highly compensated exemption under the Act.

Oil States argues the highly compensated employee exemption applies to each employee. For the highly compensated employee exemption to apply, Oil States must show each employee: (1) earned at least $100,000 in total annual compensation; and, (2) customarily and regularly performs one or more of the exempt duties or responsibilities of an executive, administrative or professional employee.[6]

For the first element, there is a genuine dispute whether six out of the fifteen employees, Mr. Bolen, Mr. Eddy, Mr. Frick, Mr. George, Mr. Kubiak, and Mr. Pond, exceeded $100,000 in total annual compensation in at least one of the years.[7] Oil States uses different calendar years for calculating the $100,000 in annual income. For example, Oil States declares Mr. Eddy made $115,000 in 2014. Oil States then declares it terminated Mr. Eddy's employment on February 18, 2015 and in the 12 months before his termination, Mr. Eddy made $118,000. Oil States is possibly double counting 10 months of Mr. Eddy's income.[8]

For the second element, there are genuine disputes of material fact whether the fifteen employees' primary duty is exempt administrative tasks. To determine if an employee performs exempt administrative tasks, we look at whether an employee exercises discretion and judgment/unilateral authority and an employee's primary duty includes non-manual labor.

There are genuine disputes regarding whether employees exercised discretion and judgment. For example, we find disputes whether employees exercise unilateral authority in placing cranes and shut down drilling entirely for safety concerns. Oil States declares "because

3

of the potential for loss of life or significant financial harm, the Field Service Supervisor had the unilateral authority to shut down the operations at the site if he believed operating conditions were unsafe."[9] However, Mr. Bratton testified, "Q: And would they generally accept your explanation and allow you to put [the crane] somewhere you thought it was safe? A: That's why I used my crane manuals...I show then OSHA and ANSI regulations. If they want me to set it up, I basically tell them I cannot, and then I'll call the office and they go from there." [10] Other employees also similarly testified they did not exercise discretion because they were required to call their Oil States managers before stopping work for safety reasons outside of defined events like lightening or winds over 32 mph.[11]

There is also a genuine dispute whether employees used judgment and discretion when taking samples of data readouts, and make modifications to the grease unit to correct well pressure. Oil States declares, "[t]he bulk of the Field Service Supervisor's time at the well-site spent monitoring the data from the grease unit, interpreting that data to evaluate the performance of the unit in maintaining optimal pressure, and then making decisions regarding the reasons for any pressure malfunction...Field Service Supervisor were responsible for using their expertise and judgment to identify the cause of any loss (or increase) in pressure and then making a decision on how to correct the issue."[12] Mr. Soltesz-Haughton testified he did not need to use judgment and discretion because "[m]y SOP says 2025 over the well head pressure. If the guy says, hey, we're at 1,000 PSI, I'm going 2000 over that. I don't have to do anything. All I have to do is turn the dial....I don't have to think about a magic number that I have to come up with to compensate for the pressure. It's already spelled out for me. All I have to do is adhere to the guidelines."[13]

4

There are genuine disputes regarding whether non-manual labor of completing job logs and safety paperwork is an employee's "primary duty." Oil States argues job logs are a "critical piece" of a Field Service Supervisor's position.[14] However, Mr. Burchick testified the job logs took "a couple minutes" and Mr. Lett testified "the bonus...I would fill out the ticket for the crane, and then give it to the grease operator to turn it into the office."[15]

These genuine disputes of material fact must be resolved at trial after evaluating credibility.

### 2. Executive exemption under the Act.

For the executive exemption to apply to Mr. Bolen, Oil States must show Mr. Bolen's (1) primary duty is management of the enterprise; (2) Mr. Bolen customarily and regularly directs the work of two or more employees; and, (3) Mr. Bolen has the authority to hire and fire other employees or whose suggestions and recommendations...are given particular weight.[16]

Among other issues, there are genuine disputes whether Mr. Bolen directed the work of two or more junior employees. Oil States declares, "[m]ost crews consisted of four Field Service Supervisors. The crews typically worked alternating twelve-hour shifts."[17] Only two employees worked a drill site at a time, which would mean if Mr. Bolen is directing another's work it would only be one employee, not two or more. Mr. Court from Oil States offers conflicting accounts of whether employees supervised junior employees. As Oil States' corporate designee, he testified, "Q: Everyone on location except the trainees is expected to be able to do their job without someone out there telling them how to do it. Correct? A: Yes. Q: And so the Field Service Supervisor III isn't there to tell other people what to do or to give work instructions, Correct? A: By minute? Minute by minute? No. Q: Or hour-by-hour even. A: Not necessarily..."[18] But Mr. Courts declares, "[t]he most senior Field Service Supervisor served as lead on the job, and was

5

charged with supervising the remaining Field Service Supervisors."[19] Because there is a genuine dispute about whether these employees "customarily and regularly direct the work of two or more employees" and all three elements are necessary for the executive exemption to apply to Mr. Bolen, we deny summary judgment based on the executive exemption.

### 3. Combination exemption under the Act.

For the combination employee exemption to apply, Oil States must show the ten employees' "primary duty involves a combination of exemption administrative and exempt executive work may qualify for exemption."[20] As shown above, we find genuine disputes of material fact as to the employees' administrative duties and Mr. Bolen's alleged executive duties. These genuine disputes, such as whether they exercise unilateral authority in placing cranes and shut down drilling entirely for safety concerns,[21] take samples of data readouts, and make modifications to the grease unit to correct well pressure,[22] and whether completing paperwork, a non-manual task, is a primary duty[23] exist for all ten employees and those disputes preclude summary judgment as to the combination exemption.

## B. There are genuine disputes regarding exemption under the Motor Carrier Act.[24]

We do not grant summary judgment on the claim employees are exempted under the Motor Carrier Act because there are conflicting facts regarding their vehicle use. For example, there are conflicting facts whether employees drove vehicles weighing more than 10,000 pounds.[25] Oil States declares "fuel records show that Bolen drove a Chevrolet 3500 4X4 and refueled it on jobs outside of Pennsylvania" but Mr. Bolen testified he did not drive the vehicle but lent his fuel card to co-workers driving trucks weighing more than 10,000 pounds.

There is a dispute whether employees transported bulk hazardous material in their vehicles across state lines. Oil States argues the employees carried hazardous materials because employees used their trucks "also used to carry additional diesel fuel, with the total diesel fuel

6

being carried often exceeding 119 gallons."[26] However, another Oil States employee testified "Q: How gig is that diesel tank? A: A hundred gallons. Q: Are they all a hundred gallons? A: You might have some that are ninety, but for the most part a hundred is the norm."[27] There is a dispute whether employees with a commercial driver license operated Department of Transportation ("DOT") regulated vehicles without being included on Oil States DOT regulated driver list. Oil States declares "[a]ny employee who had a Commercial Driver's License could be called upon to drive a DOT vehicle, including across state lines, at any time. Also, many trucks weighed more than 10,000 pounds, but were not registered with DOT. All Field Service Supervisors could be called upon to drive these trucks, including across state lines."[28] But an Oil States manager testified, "Q: Have you ever heard of someone who is not on the regulated drivers' list driving a DOT vehicle? A: Not to my knowledge."[29]

These genuine disputes of material fact need to be resolved by a jury determining the credibility of testimony.

### C. Oil States did not plead pre-emption as an affirmative defense.

Oil States' failed to plead pre-emption as an affirmative defense so its argument is likely waived.[30]

### D. Genuine disputes of material fact preclude summary judgment as to hours worked by employees.

There are genuine disputes of material fact regarding whether employees' produced sufficient evidence of hours worked. Employees produced tally books logging their work,[31] and employees testified they completed and submitted to Oil States a "bonus packet" after each job detailing employees' arrival and departure times. Oil States declares, and employees do not dispute, employees had to complete a job log because "the job log is important because it serves an account of [employee's] actions at the time they were taken, and document his efforts on

7

behalf of Oil States as part of the control pressure function. Further, the job log served as summary of tasks performed in the event a billing dispute arose between Oil States and its customers."[32]

### E. Genuine disputes of material fact preclude summary judgment as to offsets and Oil States' state of mind.

Because there are genuine disputes of material facts regarding whether the fifteen employees are exempt under the Act, PMWA, and the Motor Carrier Act, and those facts are necessary to determine the remainder of the employees' claims, we deny summary judgment on whether Oil States is entitled to an offset if it misclassified the employees, and whether Oil States' alleged violation of the Act is willful.

### III. Conclusion

The several genuine issues of material fact preclude summary judgment and warrant entry of the accompanying Order denying all motions for summary judgment.

---

[1] George Bolen (ECF Doc. No. 103-106), Donald Bratton (ECF Doc. No. 107-110), Michael Burchik (ECF Doc. No. 111-114), Michael George (ECF Doc. No. 116-119), Kari Gordon (ECF Doc. No. 120-123 , Jason Lett (ECF Doc. No. 124-127), Matthew Frick (ECF Doc. No. 128-131), Stephen Scot R. Pond (ECF Doc. No. 132-135), Brian Kubiak (ECF Doc. No. 136-139), Ryan Karmann (ECF Doc. No. 140-143), Stephen Soltesz-Haughton (ECF Doc. No. 144-147), Jeffery Steffish (ECF Doc. No. 148-151), Matthew Williams (ECF Doc. No. 149-155), Wayne Eddy (ECF Doc. No. 156-159), and Robert Pickel (ECF Doc. No. 160-163).

[2] ECF Doc. No 164-167.

[3] *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

[4] Mr. Bolen, Mr. Gordon, Mr. let, Mr. Frick, Mr. Pond, Mr. Karmann, Mr. Soltez-Haughton, Mr. Steffish, Mr. Williams, and Mr. Pickel.

[5]The disputed facts are pertinent to the Act and PMWA claims so we analyze them together.

[6] 29 C.F.R. § 541.601(a).

⁷*See* ECF Doc. No. 130 ¶¶ 103-104; ECF Doc. No. 118 ¶¶ 106-110; ECF Doc. No. 134 ¶¶ 104-108; ECF Doc. No. ¶¶ 107-110; ECF Doc. No. 138 ¶¶ 84-88.

⁸ ECF Doc. No. 158 ¶¶ 129-132.

⁹ ECF Doc. No. 131-4 ¶ 62.

¹⁰ ECF Doc. No. 167-9 at 25.

¹¹ ECF Doc. No. 186 at 11.

¹² ECF Doc. No. 131-4 ¶ 31-32.

¹³ ECF Doc. No. 167-15 at 25.

¹⁴ ECF Doc. No.131-4 at 9.

¹⁵ ECF Doc. No. 167-18 at 18; ECF Doc. No. 167-10 at 33.

¹⁶ 29 C.F.R § 541.100.

¹⁷ ECF Doc. No. 106-4 at 6.

¹⁸ ECF Doc. No. 166 at 7.

¹⁹ ECF Doc. No. 131-4 ¶ 45.

²⁰ 29 C.F.R. § 541.708.

²¹ *See* ECF Doc. No. 131-4 ¶ 62; ECF Doc. No. 167-9 at 25.

²² *See* ECF Doc. No. 131-4 ¶ 31-32; ECF Doc. No. 167-15 at 25.

²³ *See* ECF. Doc. No. 167-18 at 18; ECF Doc. No. 167-10 at 33.

²⁴ Oil States also alleges the employees are exempt under the Pennsylvania Motor Carrier Exemption. Because the same underlying facts apply to both claims, we analyze them together.

²⁵ ECF Doc. No. 105 ¶¶ 96-97; ECF Doc. No. 167-8 at 11-12.

²⁶ ECF Doc. No. 118 ¶ 95.

²⁷ ECF Doc. No. at 167-3 at 41.

²⁸ ECF Doc. No. 131-4 ¶¶ 13-15.

²⁹ ECF Doc. No. 167-4 at 129. *See also* Oil States' Corporate Designee deposition after testifying a vehicle with 10,001 GVWR needs to have a sticker on the side "Q: So any vehicle that weighs more than 10,000 pounds has to have a DOT number on it? A: No. That's two different statements. The GVWR is stand-alone 10,000 pounds. That's what it weights, so it has to have the number on the side. If a vehicle weighs more than that, it's a different story." ECF Doc. No. 167-3 at 51.

³⁰ "Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). A defendant may waive its federal pre-emption argument by failing to plead federal pre-emption as an affirmative defense. *See Rehab. Inst. of Pittsburgh v. Equitable Life Assur. Soc. of U.S.*, 131 F.R.D. 99, 100-101 (W.D.Pa. 1990), *aff'd* 937 F.3d 598, (3d Cir. 1991).

³¹ Bolen Tally Book, ECF. Doc. No. 187-8; Gordon Tally Book, ECF Doc. No. 187-9; George Tally Book, ECF Doc. No. 187-10; Pond Tally Book, ECF Doc. No. 187-11.

³² ECF Doc. No. 179 at 17.