**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **SAMMY MOZINGO; JAMIE HOLLOWAY;** | : |
| **GEORGE BOLEN, JR.; DON BRATTON;** | : |
| **MICHAEL BURCHIK; BARRETT** | : |
| **DUPLECHAIN; WAYNE EDDY; MICHAEL** | : |
| **FRANCIS; MATTHEW FRICK; MICHAEL** | : |
| **GEORGE; KARI GORDON; CHRIS GRYMES;** | : |
| **STEPHEN SOLTESZ-HAUGHTON; MILTON** | : |
| **HOLIFIELD; DANIEL HOLIFIELD; MICHAEL** | : |
| **HOLIFIELD; RYAN KARMANN; BRIAN** | : |
| **KUBIAK; CHADRICK LEOPAUL; JASON LETT;** | : |
| **DONALD LEWIS; GREG MORRILL; ROBERT** | : **Civil Action No. 2:15-529** |
| **PICKEL; SCOT POND; RYAN SHOWS;** | : |
| **JEFFREY STEFFISH; BRIAN TULLY; STEPHEN** | : |
| **WALTERS; MATT WILLIAMS,** | : **Judge Mark A. Kearney** |
| | : |
| *Plaintiffs*, | : |
| v. | : |
| | : |
| **OIL STATES ENERGY SERVICES, L.L.C. f/k/a** | : |
| **SPECIALTY TANK SUPPLY; OIL STATES** | : |
| **ENERGY SERVICES HOLDING, INC.; OIL** | : |
| **STATES INTERNATIONAL, INC.** | : |
| | : |
| *Defendants*. | : |

---

## Plaintiffs' Motion for Attorneys' Fees and Costs

Plaintiffs Michael Burchik, Wayne Eddy, Jason Lett, Robert Pickel, George Bolen, Jr.,

Michael George, Stephen Soltesz-Haughton, Jeffrey Steffish, Donald Bratton, Jr., Kari Gordon,

Ryan Karmann, Scot Pond, and Matthew Williams respectfully move for an award of attorneys'

fees and costs from Defendant Oil States Energy Services, LLC pursuant to Rule 54(d) of the

Federal Rules of Civil Procedure, 29 U.S.C. § 216(b), 28 U.S.C. § 1920, and the settlement

agreement between Oil States and certain plaintiffs, ECF No. 480-1.

This fee petition comes at the end of a hard-fought, three-year litigation over whether Oil

States denied overtime to certain categories of its oilfield workers in violation of federal law. The

issues presented were complex and novel, and required two full jury trials to resolve—a rarity in the realm of overtime litigation. Oil States' counsel vigorously defended the case at every turn, fighting hard against discovery, filing multiple summary-judgment motions, and raising myriad pre-trial, mid-trial, and post-trial issues. As it had long promised it would, Oil States put forth every effort to deny the plaintiffs the recovery they sought. At the end, however, the plaintiffs were successful in pressing their claims: The first two plaintiff groups obtained unanimous verdicts and substantial awards that dwarfed all prior settlement offers, and this success then led to an extraordinary recovery for the remaining Group Three plaintiffs. The plaintiffs' attorneys at Williams & Connolly LLP (W&C) and The Employment Rights Group (ERG) now seek an award of statutory fees and costs for their successful and protracted efforts.

## BACKGROUND

This case began more than three years ago as a "hybrid" class and collective action under the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA). The *Mozingo* plaintiffs' original complaint alleged that Oil States misclassified grease, crane, and frac operators who worked in its Pennsylvania districts as exempt from the overtime laws.  ECF No. 1.

Two weeks after that complaint was filed, the plaintiffs in a different case, *Frost v. Oil States Energy Services, LLC*, amended their complaint to add collective- and class-action claims under the FLSA and PMWA on behalf of all Oil States employees "who were paid a salary and a day rate without receiving overtime." *Frost*, No. 4:14-cv-1100, dkt. no. 29 (S.D. Tex. May 7, 2015). The next day, the *Frost* parties announced an agreement to settle their case.  *Id.*, dkt. no. 30. Yet the *Frost* parties refused to disclose the settlement terms and filed their class-action settlement agreement under seal. *Id.*, dkt. no. 35. By that time, 23 more individuals had joined the

*Mozingo* case as plaintiffs. *See* ECF Nos. 2-3, 5-12, 17-22, 24-28, 30, 32-34. Although those plaintiffs were in the putative *Frost* class, they joined the *Mozingo* action while awaiting notice of the settlement amount they were eligible to receive in *Frost*.

Meanwhile, in light of the *Frost* settlement, the *Mozingo* plaintiffs amended their complaint to remove the class-action allegations, converting this into an individual action.  ECF No. 37. On the same day, the parties asked to postpone the mediation in *Mozingo* until after the plaintiffs received the *Frost* class-action settlement notice and decided whether to participate.  ECF No. 39, at 5-6.  When the plaintiffs finally received the *Frost* class-action notice, they were offered settlement amounts ranging between $2,250.92 and $6,275.28. *See* Ex. A ("Warren Decl."), ¶ 7. This case proceeded on behalf of 29 plaintiffs who declined the *Frost* offer. ECF No. 49.

### A.    Discovery

In a mutual effort to reduce costs and streamline this litigation, the parties initially agreed to select a group of bellwether plaintiffs, with initial discovery and summary-judgment motions limited to that group. ECF No. 39, at 3. The plaintiffs proposed a group of bellwether plaintiffs in November 2015. ECF No. 232-4. But in December 2015, Oil States inexplicably abandoned the bellwether process and served robust discovery requests on all 29 plaintiffs.[1] *See* ECF No. 232-8, at 7; ECF No. 232-19, at 2-5 & n.1.  In light of that decision, the Court extended the discovery deadline to allow the parties to complete discovery on behalf of all 29 plaintiffs. ECF No. 63.

Oil States then sought to take a full seven-hour deposition of each of the 29 plaintiffs—rejecting the plaintiffs' various proposals to reduce the expense and burden of these depositions,

---

[1]     The plaintiffs had previously sought the hours records of all 29 plaintiffs, as the parties had agreed to exchange damages estimates to prepare for a December mediation.  *See* ECF No. 232-6.

such as a proposal for out-of-town plaintiffs to appear by videoconference. The Court granted Oil States' request over the plaintiffs' objection, requiring each plaintiff to sit for a seven-hour deposition in Pittsburgh. ECF No. 67. Those depositions occurred in March and April 2016.

At the same time, Oil States consistently failed to comply with its discovery obligations. As the plaintiffs catalogued in their Response to Defendant's Motion to Strike Untimely Disclosure, ECF No. 232, Oil States repeatedly refused to produce a wide variety of relevant and responsive documents. *See* ECF Nos. 232-9. As a result, the plaintiffs had to seek relief from the Court on an assortment of issues, *see* ECF No. 232-19 (letter brief re: discovery dispute), and the Court granted the requested relief, ECF No. 80. Oil States' dilatoriness led the Court to extend the discovery deadline twice more in April and May 2016. ECF Nos. 81-82, 89-90.

### B.      Summary Judgment

After discovery closed in June 2016, the parties filed cross-motions for summary judgment. The plaintiffs' single summary-judgment motion sought to narrow the scope of the dispute. Oil States' answer had invoked multiple exemptions to the overtime laws—the motor carrier exemption, administrative exemption, executive exemption, outside sales exemption, federal combination exemption, and the exemption for highly compensated employees. ECF No. 75, at ¶¶ 67, 92. Given the lack of evidence supporting several of these defenses (as demonstrated by Oil States' decision not to request jury instructions on most of these exemptions at trial), the plaintiffs sought to eliminate at least some of these exemptions on summary judgment. ECF Nos. 165, at 12-49. The plaintiffs also sought to carve out other baseless defenses, such as those related to damages

offsets and severance payments, and to resolve the appropriate damages formula.[2] *Id.* at 50-62.

Oil States also moved for summary judgment, but opted to file a separate motion and statement of facts for each plaintiff. ECF Nos. 103-163. Each motion consisted of 25 pages of arguments tailored to that plaintiff's job duties and deposition testimony, and each statement of facts included about 200 paragraphs. *Id.* Although the plaintiffs were able to file an omnibus response brief on behalf of all plaintiffs, ECF No. 188, they were compelled to respond separately to each statement of facts, ECF Nos. 171-186.

The Court denied all of the relief sought in the parties' cross-motions for summary judgment and elected to postpone its decision on the questions of law. ECF Nos. 201-202.

### C.    Trial Preparations

The Court then solicited trial scheduling proposals from the parties, noting its concerns about "the unmanageability of a fifteen plaintiff jury trial when each claim and exemption defense must be separately evaluated." ECF No. 214. The plaintiffs proposed to divide themselves into three trial groups, ECF No. 221, and the Court adopted that proposal, ECF No. 224.

Five months before the scheduled start of the Group One trial, Oil States moved to exclude all of the plaintiffs' damages evidence. ECF No. 230. After extensive briefing, the Court denied the motion but allowed Oil States to depose each plaintiff for a second time. ECF No. 237. Oil States accepted and deposed each plaintiff for a second time in May, June, and July 2017.

Between July and October 2017, the parties submitted extensive pretrial filings for the Group One and Group Two trials, including exhibit lists, pretrial memoranda, jury instructions,

---

[2]     Although these issues were not resolved on summary judgment, the Court subsequently awarded the relief sought by the plaintiffs.  *See* ECF No. 287 (severance); ECF No. 290 (damages formula).  Thus the plaintiffs successfully recycled this particular work in later motions.

and motions *in limine*. *See generally* ECF Nos. 244-360. The motions *in limine* covered many issues of first impression in the Third Circuit, with conflicting case law in other jurisdictions. The plaintiffs then took the lead on combining the parties' proposed jury instructions into one document, seeking to resolve disagreements where possible and otherwise noting the parties' competing proposals. ECF Nos. 263, 291, 314. The plaintiffs also took the lead on combining the exhibit lists into one joint exhibit list, in accordance with this Court's policies and procedures.

### D.    Settlement Discussions

Throughout, plaintiffs' counsel worked diligently to negotiate a settlement that would avoid the expense and burden of trial. The discovery period was bookended by two extended settlement conferences, with additional negotiations in October and December 2016 and again before trial. *See* Warren Decl., ¶¶ 8-12. But Oil States' best offers amounted to just a small fraction of the damages sought by the plaintiffs—and a fraction of the damages awarded at trial. The table below shows Oil States' various settlement offers—which included all fees and costs. *See id.*

| Plaintiff | *Frost* (Sept. 2015) | Dec. 2015 | June 2016 | Oct. 2016 | Oct. 2017 |
|-----------|---------------------|-----------|-----------|-----------|-----------|
| Burchik | unknown | $15,000 | $6,935.86 | $17,876.90 | $37,500 |
| Eddy | unknown | $15,000 | $7,727.59 | $14,339.39 | $37,500 |
| Lett | $2,250.92 | $15,000 | $11,238.35 | $16,000 | $37,500 |
| Pickel | $2,542.36 | $15,000 | $3,381.34 | $12,000 | $37,500 |
| Bolen | unknown | $15,000 | $8,414.75 | $16,573 | N/A |
| George | $2,653 | $15,000 | $3,529.78 | $11,473.70 | N/A |
| Haughton | $5,487.77 | $15,000 | $14,597.47 | $16,071.41 | N/A |
| Steffish | $6,275.28 | $15,000 | $18,077.79 | $20,000 | N/A |
| Bratton | $4,514.24 | $15,000 | $6,003.94 | $12,543 | N/A |
| Gordon | $5,462.97 | $15,000 | $12,415.46 | $21,172.92 | N/A |
| Karmann | unknown | $15,000 | $9,038.89 | $14,000 | N/A |
| Pond | $6,275.28 | $15,000 | $16,626.28 | $22,404.40 | N/A |
| Williams | $6,275.28 | $15,000 | $18,077.79 | $20,000 | N/A |

### E.    Group One and Group Two Trials

The Group One plaintiffs went to trial in October 2017. After a four-day trial, the jury found in favor of the plaintiffs and awarded them substantial damages, ECF No. 381, and the Court granted the plaintiffs' motion for liquidated damages, ECF No. 398. The Group One plaintiffs were awarded the following amounts: Michael Burchik: $178,388; Wayne Eddy: $265,688; Jason Lett: $54,262; Robert Pickel: $139,366. ECF No. 484. In total, this award was more than four times greater than Oil States' pretrial settlement offer—an offer that also covered all fees and costs.

The Court then rescheduled the Group Two trial for February 2018, and after a short break, the plaintiffs began to prepare. But on the eve of that trial, after plaintiffs' counsel had moved to Pittsburgh for final preparations, Oil States sought a postponement due to the apparent imminent death of a witness's father, ECF No. 406, which the Court granted. Oil States then tried to exploit the reprieve by adding new deposition designations and expanding the scope of a central witness's testimony. The Court granted the plaintiffs' motions to exclude this evidence, ECF Nos. 422, 430, and the parties proceeded to trial. After a five-day trial, the jury found in favor of the plaintiffs, ECF No. 451, and the Court awarded liquidated damages, ECF No. 483. The Group One plaintiffs were awarded the following amounts: George Bolen, Jr.: $101,699.24; Michael George: $58,275.04; Stephen Soltesz-Haughton: $104,690.64; Jeffrey Steffish: $100,786.56. ECF No. 484. These amount were *five to six times greater* than the largest settlement offer that Oil States made to the Group Two plaintiffs—and again those settlement offers *included* attorneys' fees and costs.

### F.    Group Three Settlement

Immediately after the Group Two trial, the parties began preparing their pretrial filings for Group Three. Because these were the first pretrial filings submitted *after* a trial, both parties

revised their pretrial memoranda, jury instructions, deposition designations, and motions *in limine* to reflect issues that arose and rulings that were made in the Group One and Group Two trials. *See* ECF Nos. 456-472. The plaintiffs also moved for partial summary judgment on the basis of issue preclusion, arguing that the verdicts in the first and second trials precluded Oil States from re-litigating the merits of their defenses. ECF No. 467. But before this motion could be adjudicated, the parties agreed to settle the Group Three plaintiffs' claims for $700,000, *exclusive* of attorneys' fees and costs. ECF No. 480. The Group Three plaintiffs recovered **between six and eleven times more** than Oil States' largest prior settlement offer—an offer that also included all fees and costs.

## ARGUMENT

The Group One, Group Two, and Group Three[3] plaintiffs prevailed in this litigation and are therefore entitled to an award of attorneys' fees and nontaxable expenses under 29 U.S.C. § 216(b), as well as an award of taxable costs under 28 U.S.C. § 1920. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001). The plaintiffs bear the ultimate burden of showing the reasonableness of both the hourly rates and the number of hours for which they seek payment. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

### I.     THE HOURLY BILLING RATES ARE REASONABLE MARKET RATES.

The timekeepers who worked on this matter are seeking fees at the following rates:

| NAME | TITLE | FIRM | RATE |
|------|-------|------|------|
| Joseph H. Chivers | Principal | ERG | $550 |
| Samuel Bryant Davidoff | Partner | W&C | $550 |
| Zachary K. Warren | Associate | W&C & ERG | $375 |
| Jeffrey W. Chivers | Attorney | ERG | $375 |

---

[3]     In the settlement agreement, the parties agreed that the Group Three plaintiffs would be treated as the prevailing party in this litigation and would be entitled to an award of their reasonable attorneys' fees and costs.  *See* ECF No. 480, at 6-7; ECF No. 480-1, at 3.

| Janine M. Pierson | Associate | W&C | $350 |
|---|---|---|---|
| Michelle L. Hood | Associate | W&C | $310 |
| John S. Connolly | Associate | W&C | $285 |
| Daniel D. Whiteley | Summer Associate | W&C | $225 |
| Peter J. Shanz | Case Manager | W&C | $250 |
| Jessica L. Grass | Paralegal | ERG | $225 |
| Milagros Bartolome | Paralegal | W&C | $235 |
| Isaac N. Cohen | Paralegal | W&C | $215 |
| Felicia Gleaton | Litigation Support Project Manager | W&C | $260 |
| M. Elbarbary & G. Beulah | Litigation Support Analysts | W&C | $250 |

As explained below, these hourly billing rates are reasonable market rates. *See NFL Props. LLC v. Wohlfarth*, 2011 WL 1402770, at *3 (W.D. Pa. Apr. 13, 2011) (party seeking fees must show that requested billing rates are consistent with reasonable market rates for the essential character and complexity of the services rendered).

### 1.    These rates have already been approved in this district.

ERG bills most of its clients on a contingency rather than hourly basis. *See* Ex. B ("Chivers Decl."), ¶ 12. But to the extent the firm bills clients on an hourly basis, the rates used in this fee petition are the rates billed to clients. *Id.* And in contingency cases, courts in this district have specifically approved ERG's rates as reasonable. *See, e.g.*, *Dull v. Integrated Prod. Servs., Inc.*, No. 2:14-cv-1437-NBF, dkt. no. 70, at 24 (W.D. Pa. May 18, 2016) (stating that "the hourly rates charged by Attorneys Chivers and Linkosky of $550 per hour and Attorney Jeffrey Chivers of $350[4] are considered reasonable by this Court, given prevailing rates in this type of litigation,[5] but also given their respective experience, years at the bar and their ability to mount this kind of case,"

---

[4]     The rate charged by Jeffrey Chivers in *Dull* was actually $375—not $350. *See Dull*, No. 2:14-cv-1437-NBF, dkt. no. 60, at 4 (W.D. Pa. Feb. 26, 2016). The Court approved that rate.

[5]     *Dull* was substantively identical to this case: a lawsuit against an oil-and-gas company on behalf of field employees who were denied overtime under the same FLSA exemptions.

and further stating that "these rates are also akin to the kinds of rates that you would see in this type of case").

In fact, every judge in the Western District of Pennsylvania who has considered the rates for Joseph Chivers, Zachary Warren, and Jeffrey Chivers has approved them. *See e.g.*, *Ringler v. Norwin Techs.*, No. 2:17-423-AJS, dkt nos. 70, 76 (W.D. Pa. Mar. 13, 2018) (approving $575 rate for JHC); *Clark v. Warrior Energy Servs. Corp.*, No. 3:16-cv-052-KRG, dkt nos. 40, 43 (W.D. Pa. May 8, 2017) (approving rates of $575 for JHC and $375 for JWC); *Bastin v. Integrated Prod. Servs., Inc.*, No. 2:15-cv-882-NBF, dkt. nos. 27, 34 (W.D. Pa. Apr. 14, 2016) (approving rates of $550 for JHC and $375 for ZKW); *Dull v. Integrated Prod. Servs., Inc.*, No. 2:14-cv-1437-NBF, dkt. nos. 60, 68-69 (W.D. Pa. Mar. 24, 2016) (approving rates of $550 for JHC and $375 for JWC); *Imhoff v. Weatherford Int'l, LLC*, No. 2:15-cv-679-AJS, dkt nos. 57, 59 (W.D. Pa. Aug. 10, 2016) (approving rates of $525 for JHC and $375 for ZKW and JWC); *Naicker v. Warrior Energy Servs., Inc.*, No. 2:14-1140-MRH, dkt. nos. 88-91 (W.D. Pa. July 12, 2016) (approving rates of $525 for JHC and $375 for ZKW and JWC); *Riggs v. Senior Choice, Inc.*, No. 3:15-cv-057-KRG, dkt. nos. 39-41, 46 (W.D. Pa. Feb. 19, 2016) (approving rates of $525 for JHC and $375 for ZKW and JWC); *Haught v. Summit Resources, LLC*, No. 1:15-cv-069, dkt no. 59 (M.D. Pa. Apr. 4, 2016) (approving rates of $525 for JHC and $375 for JWC); *Dunkel v. Warrior Energy Servs. Corp.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 18, 2016) (approving rates of $525 for JHC and $375 for JWC).

Indeed, these cases support even higher rates for these attorneys. Courts have approved rates of $375 for Zachary Warren and Jeffrey Chivers and $550 for Joseph Chivers since early 2016. And in a fee petition, "[t]he relevant rate is to be calculated at the time of the fee petition, rather than the rate at the time the services were actually performed." *NFL Props. LLC*, 2011 WL

1402770, at *2 (citing *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001)). So it would be reasonable for these attorneys to charge rates that are higher than the rates charged and approved in 2016. In *Fross v. County of Allegheny*, for example, the attorneys' hourly billing rates had increased $50 since a fee petition filed 18 months earlier, and the court held that the increase was both justified and reasonable. 848 F. Supp. 2d 547, 556 (W.D. Pa. 2012). Yet ERG maintained the same billing rate for Zachary Warren and Jeffrey Chivers throughout 2016 and 2017, and in this petition Joseph Chivers requests the same rate that was approved by courts in early 2016—which is *less* than the rate approved by courts in 2017 and 2018.

W&C has never submitted a fee petition in this district, so this Court has had no opportunity to assess its requested rates. However, the rates charged by the W&C attorneys in this case are identical to, or less than, the rates charged by the ERG attorneys. These rates are also substantially less than the rates at which W&C typically bills its clients. Warren Decl., ¶ 21.

### 2. These rates are consistent with prevailing rates in Pittsburgh.

These rates are also consistent with the prevailing rates for attorneys in the Western District of Pennsylvania. *See Loughner*, 260 F.3d at 180 ("Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."). In recent years, courts adjudicating fee petitions have approved similar rates for other attorneys in this district.[6] *See, e.g.*,

---

[6]     Several courts approved slightly lower rates in prior years; when these rates are adjusted to account for annual rate increases, they are in line with the rates used in this case. *See, e.g.*, *ThermoLife Int'l, LLC v. D.P.S. Nutrition, Inc.*, 2016 WL 6916777, at * (W.D. Pa. Feb. 5, 2016) (approving rates of $688.50 and $594 for partners, $250 for associate, and $240 for paralegal in 2016); *Fross*, 848 F. Supp. 2d at 556 (approving rates of $500, $475, and $325 in 2012); *Miles v. Saldutte*, 2015 WL 12752850, at *3 (W.D. Pa. Aug. 24, 2015) (approving rate of $525 in 2015 where attorney billed $400 per hour in 2007 and $500 per hour in 2012); *see also Fross*, 848 F. Supp. 2d at 556 (approving $50 increase in rate since fee petition filed 18 months earlier).

*Brogdon v. Correct Care Solutions, LLC*, 2017 WL 4350327, at *2-3 (W.D. Pa. Aug. 16, 2017) (approving hourly billing rate of $600 for two attorneys at a small firm); *Despot v. Baltimore Life Ins. Co.*, 2016 WL 7094315, at *6-7 (W.D. Pa. Nov. 2, 2016) (concluding that the following hourly rates were reasonable for Pittsburgh employment attorneys in 2016: $620 and $450 for partners, $320 for fifth-year associate, $265 for paralegal, and $250 for litigation support analyst); *Clark v. Warrior Energy Servs. Corp.*, No. 3:16-cv-052-KRG, dkt nos. 41, 43 (W.D. Pa. May 8, 2017) (approving billing rates of $795 and $580 for partners and $405 and $395 for associates).

Affidavits from other attorneys confirm that these are reasonable market rates. *See, e.g.*, *Despot*, No. 2:15-cv-1672-CB, dkt nos. 84-2, 84-3, 84-4 (W.D. Pa. Oct. 5, 2016) (attesting to the following rates for employment attorneys: $620, $505, and $450 for partners; $320 for associate; $265 for paralegal; and $250 for litigation support analyst); *Clark*, No. 3:16-cv-052-KRG, dkt no. 41 (W.D. Pa. May 8, 2017) (attesting to the following rates for employment attorneys: $795 and $580 for partners and $405 and $395 for associates). And bankruptcy filings confirm that attorneys in this district charge similar rates. *See, e.g.*, *In re PTC Seamless Tube Corp.*, No. 15-21445-TPA, dkt no. 255, at 2 (Bankr. W.D. Pa. June 22, 2015) (successfully petitioning for fees at the following rates for employment attorneys: $650 for partner and $350 and $335 for associates); *In re Prime Metals & Alloys, Inc.*, No. 17-70164-JAD, dkt. no. 200-2, at 38 (Bankr. W.D. Pa. Sept. 19, 2017) (successfully petitioning for fees at the following rates: $500 for partner, $445 and $325 for associates, and $375 for paralegal); *In re Unique Ventures Grp., LLC*, No. 17-20526-TPA, dkt no. 1005-5, at 2 (Bankr. W.D. Pa. Feb. 23, 2018) (successfully petitioning for fees at the following rates: $615, $605, $590, $565, and $515 for partners; and $400, $385, and $355 for associates).

## II.      THE HOURS INCLUDED IN THIS FEE PETITION ARE REASONABLE.

The hours included in this fee petition were reasonably spent litigating this matter. *See Loughner*, 260 F.3d at 177 (allowing exclusion only of hours that are "excessive, redundant, or otherwise unnecessary"). As an initial matter, the plaintiffs have already excluded a substantial number of hours, many of which are recoverable, to avoid arguments of excess, redundancy, or lack of necessity. This includes all travel time (except for travel time caused by Oil States' request to postpone the Group Two trial); time spent by new attorneys getting up to speed; hours worked on behalf of plaintiffs outside these three trial groups; time spent by senior W&C partners who periodically consulted on the case; a substantial number of hours that arguably could be deemed redundant or unnecessary; and time spent litigating the PMWA claims.[7] Warren Decl., ¶¶ 26-29; Chivers Decl., ¶¶ 10, 13, 19. In total, Williams & Connolly excluded 996.61 hours that were actually worked by attorneys and support staff. Warren Decl., ¶ 28.

After accounting for these extensive exclusions, the plaintiffs seek $2,410,084.50 in fees for 6,924.6 hours. The magnitude of this request is largely attributable to two factors. *Cf. Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012) ("In light of the purposes underlying fee-shifting statutes, fees sought pursuant to the FLSA are not to be linked to the dollar value of the claim."). First, this case—which included more than a dozen individual named plaintiffs (whittled down from the original 29 plaintiffs)—was significantly more complex than a typical employment matter. And second, Oil States vigorously defended the case.

---

[7]      With the exception of the pretrial motion to dismiss the PMWA claims and portions of the summary-judgment briefing related to the PMWA (for which the plaintiffs are not requesting fees), very little time was expended on the PMWA claims.  PMWA claims generally track FLSA claims, and all of the discovery and pretrial filings relevant to the FLSA overlapped with the PMWA claims.  The plaintiffs conducted no additional discovery related to the PMWA claims.

**Complexity**. The Supreme Court and many lower courts have recognized the legal and factual complexity of FLSA claims. *See, e.g.*, *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) (noting the complexity of wage-and-hour litigation and approving motion for $1.3 million in fees in FLSA case that settled ***before trial***). FLSA cases that proceed to trial are especially complex—and rare. *See Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 998 (N.D. Cal. 2017) (awarding fees of $12.98 million in wage-and-hour class action that went to trial, and noting that "[b]ecause the majority of wage and hour cases of this magnitude settle, plaintiffs had few models for proceeding to trial"). These multi-plaintiff FLSA trials are exceedingly complex because of the breadth of evidence pertaining to job duties, the Byzantine regulations that must be translated for the jury, uncertainty over how to calculate damages, and the difficulty of distinguishing between multiple plaintiffs in the same trial—a concern this Court voiced during the trial scheduling conference. That complexity is evident in the lengthy jury instructions, most of which the plaintiffs drafted from scratch due to the absence of precedent. And it can be seen in the huge volume of records that the parties used to establish the plaintiffs' work hours.

That complexity was compounded here by the novelty of the legal issues. In an identical overtime case against another oilfield-services company involving the same issues and defenses, Judge Mark Hornak observed that the case was "a significantly complex case" because "[t]here were not simple statutes to deal with," and given the "dearth [of] precedential Third Circuit case law," the parties were "operating in an evolving area of the law, in an evolving segment of our economy, particularly in this part of the country," which required the attorneys "to do real genuine lawyering from the get-go in this case." Ex. C, at 7-8. And that case settled before full discovery,

14

summary judgment, and trial. Here, plaintiffs' counsel litigated a three-year-long wage-and-hour case for thirteen individual plaintiffs, tried and won two separate trials for eight of those plaintiffs, and completed substantial preparations for a third trial. The unique complexity and novelty of this case is further demonstrated by Oil States' promise to appeal a large number of this Court's rulings.

**Defense Strategy**. Oil States employed an unrelenting litigation strategy from this case's inception through its termination, which led to a substantial increase in the amount of work expended by plaintiffs' counsel. A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff[s] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986); *see also Sandvik Intellectual Prop. AB v. Kennametal Inc.*, 2013 WL 141193, at * (W.D. Pa. Jan. 11, 2013) ("While this probably should have been and could have remained a simple garden-variety discovery dispute, the pattern of delays, misrepresentations and stonewalling tactics employed by Sandvik over a ten-month period resulted in this becoming a much more hotly contested and complicated dispute than it ever should have been. . . . The Sandvik attorneys brought the exacerbation of this discovery issue upon itself."); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (stating that where an "attorney is compelled to defend against frivolous motions and to make motions to compel compliance," the hours required to litigate a matter "expand enormously").

Some examples: Oil States refused to produce documents reflecting the plaintiffs' work hours (leading to extensive efforts by counsel to obtain the documents); deposed each plaintiff twice in Pittsburgh (requiring counsel to prepare each witness and defend each deposition); refused to produce emails in response to discovery requests (requiring counsel to seek and obtain court orders); repeatedly sought to re-litigate issues the Court had previously decided (requiring counsel

15

to brief each issue multiple times and under different legal standards); filed separate summary-judgment motions and statements of fact for each plaintiff (requiring counsel to file separate responses to each statement of fact); repeatedly amended its pretrial filings, including deposition designations and jury instructions, well after court-ordered deadlines (requiring counsel to perform additional legal research, file new objections, and re-cut deposition videos in the middle of trial); repeatedly attempted to expand the scope of defense witness Rhonda Totten's trial testimony (requiring counsel to prepare a blind cross-examination and file motions the night before trial); refused to produce its own damages estimates before trial (requiring counsel to depose defense witness Anna Lowe and then study thousands of pages of GPS reports to prepare for trial); refused to drop *any* affirmative defenses until after the close of evidence (requiring counsel to prepare jury instructions for each defense and rebut each defense during the plaintiffs' case-in-chief); and refused to narrow its witness list, even during trial, and then expanded its witness list for the Group Two trial (requiring counsel to prepare full cross-examinations for each potential witness).

Courts adjudicating fee petitions in comparable cases have consistently held that the defense is reasonably responsible for the fees that arise from its own litigation strategy. For example, the plaintiffs in *Torres v. Gristede's Operating Corp.* asserted claims under the FLSA and state law, and the parties reached a $3.53 million settlement on the eve of trial. 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012). The court awarded fees and costs totaling $3.86 million based on work performed by 21 attorneys, 19 law clerks, and 67 paralegals (*before trial*), noting that "much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics" and that "[g]iven the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response." *Id.* at *4. So too here.

16

### III.      THE REQUESTED COSTS ARE REASONABLE.

Oil States is also responsible for paying many of the expenses the plaintiffs incurred in recovering their overtime pay. There are two independent bases for charging these expenses to Oil States. First, 29 U.S.C. § 216(b), 28 U.S.C. § 1920, and Rule 54(d) all provide for reimbursement of the prevailing party's costs. Second, the "reasonable attorney's fee" provided for by 29 U.S.C. § 216(b) includes "those litigation expenses that are incurred in order for the attorney to be able to render his or her legal services . . . . when it is the custom of attorneys in the local community to bill their clients separately for them." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).[8] Together, these provisions cover many different types of expenses.

**<u>Transcripts.</u>** Transcript costs are always taxable. *See* 28 U.S.C. § 1920(2) (allowing taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"). This includes the cost of deposition transcripts, which may be recovered whenever "the depositions were reasonably necessary to the case or preparation for trial." *Macario v. Pratt & Whitney Canada, Inc.*, 1995 WL 649160, at *1 (E.D. Pa. Nov. 1, 1995); *Wolfson-Verrichia Grp., Inc. v. Metro Commercial Real Estate, Inc.*, 2015 WL 13620418, at *1 n.3 (E.D. Pa. Jan. 7, 2015) ("A transcript of a deposition is 'necessarily obtained' if it was related to an issue in the case at the time the deposition was taken."). And it also includes trial transcripts. *Sergeant Hurley v. Atl. City Police Dep't*, 1996 WL 549298, at *5 (D.N.J. Sept. 17, 1996) ("This provision applies to both

---

[8]      In *Abrams*, the Third Circuit applied a New Jersey fee-shifting provision identical to 42 U.S.C. § 1988. *See* 50 F.3d at 1224. The Third Circuit also recognizes that reasonable attorney's fees under 42 U.S.C. § 1988 are the same as those under 29 U.S.C. § 216(b). *See Sullivan v. Crown Paper Bd. Co.*, 719 F.2d 667, 669 n.1 (3d Cir. 1983). Thus *Abrams* applies here.

trial and deposition transcripts."); *see also* Hon. Mark A. Kearney Policies & Proc. IV.C (May 2018) (requiring parties litigating post-trial motions to order copies of trial transcripts).

**Copies and Printing Costs.** Oil States also must pay the cost of copies and printing by outside vendors.[9] *See* 28 U.S.C. § 1920(4) (stating that "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are generally taxable). "These costs are taxable under 28 U.S.C. § 1920 even if the documents are not offered into evidence at trial." *Hurley*, 1996 WL 549298, at *3. Here, the copies and printing detailed in the billing records attached to the declarations were necessary for use in the case. The trial exhibits were used by the Court, witnesses, parties, and jury.[10] The "hours binders" contained a chronological compilation of all hours records used to calculate damages, prepare for trial, and rebut Oil States' trial testimony concerning damages. Deposition exhibits were printed for the second round of depositions of each plaintiff taken by Oil States. And highlighted deposition designations and transcript copies were printed for use by the Court, counsel, and trial witnesses.

**Computerized Legal Research.** Oil States must reimburse the cost of computerized legal research by plaintiffs' counsel. These costs may be charged as a component of a reasonable attorney's fee under 29 U.S.C. § 216. *See Hurley*, 1996 WL 549298, at *5 ("[I]t has become customary, even expected, that attorneys will use computers for research and bill clients separately for the on-line service charges."). In the Western District of Pennsylvania, "[i]t is well-established

---

[9]     Plaintiffs' counsel does not seek reimbursement for any internal copying and printing costs.

[10]     In a typical case, the plaintiffs would be entitled to reimbursement for half of these costs because this Court's policies and procedures require the parties to share the costs of creating joint exhibits.  *See* Hon. Mark A. Kearney Policies & Proc. IX.L.  Because the plaintiffs prevailed at trial in this fee-shifting case, they are entitled to reimbursement for the entirety of these costs.

that" the costs of computerized legal research such as "Westlaw and PACER fees" are recoverable "as part of a reasonable attorney's fee." *Despot*, 2016 WL 7094315, at *7.

**Travel.** Finally, Oil States is also responsible for paying the travel costs incurred by plaintiffs' counsel as part of "a reasonable attorney's fee" under 29 U.S.C. § 216(b). *See Abrams*, 50 F.3d at 1225 (listing "travel time *and expenses* of the attorney" among the items "generally recoverable" under fee-shifting statutes (emphasis added)). First, Oil States must pay the costs necessarily incurred to travel in support of the case. Second, Oil States should pay counsel's reasonable costs going to and from Pittsburgh.

Non-Pittsburgh Travel Costs**.** Plaintiffs' counsel necessarily incurred travel costs attending a deposition, engaging in settlements talks, and preparing witnesses located far from Pittsburgh. These expenses are recoverable under § 216(b). *See Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 538 (M.D. Pa. 2008) ("The cost of attorney travel to depositions and similar events is 'routinely allowed' by district courts within this circuit."); *see also Taormina v. Heritage Envtl. Servs., Inc.*, 2017 WL 3912353, at *5–6 (W.D. Pa. Sept. 5, 2017) (collecting cases for the proposition that "the United States District Court for the Western District of Pennsylvania has found that [travel] fees are recoverable").

Pittsburgh Travel Costs. Plaintiffs' counsel also reasonably and necessarily incurred $58,152.83 in travel costs to Pittsburgh that are recoverable under § 216(b). "Under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005). The plaintiffs here *did* hire Pittsburgh counsel: The Employment Rights Group. After nearly two years investigating and litigating this

case, however, lead counsel for the plaintiffs accepted an offer of employment at a law firm in Washington, D.C. Chivers Decl., ¶ 17. At that point, plaintiffs' counsel attempted to secure the assistance of another Pittsburgh firm with the resources, staffing, and subject-matter expertise to take the case to trial. *Id.* But the other firms approached were unwilling to take on the representation. *Id.*; *cf. Interfaith Cmty.*, 426 F.3d at 706–07 (permitting payment of travel expenses for counsel from outside forum where local counsel were "unwilling to handle the case").

It was therefore reasonable for the plaintiffs to retain, at Pittsburgh rates, a non-Pittsburgh firm with experience trying complex cases.[11] In *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215 (3d Cir. 1983), the Third Circuit held it was an abuse of discretion for the district court to exclude from a fee award all travel time claimed by a Philadelphia antitrust lawyer to litigate a case in Pittsburgh where the attorney's selection was "undoubtedly and reasonably influenced by" his involvement in antitrust litigation involving a similar defendant. *Id.* at 218. Here, the plaintiffs chose to retain Washington attorneys—located 90 miles closer to Pittsburgh than Philadelphia—who were familiar with the case, had subject-matter expertise, and worked at a firm capable of and willing to try this case to a verdict. The reasonable travel expenses incurred by attorneys and staff from that firm litigating this case must therefore be paid by Oil States.[12]

## CONCLUSION

For these reasons, the Group One, Group Two, and Group Three plaintiffs request an award of attorneys' fees and costs in the total amount of $2,550,371.23. A proposed order is attached.

---

[11]    Oil States must agree, as it retained Texas-based trial counsel to litigate this matter.

[12]    In the exercise of billing judgment and in recognition of their ability to drive between Washington and Pittsburgh, plaintiffs' counsel have written off all airfare between the two cities.

<u>Dated</u>: July 2, 2018

/s/ Zachary K. Warren

Samuel Bryant Davidoff, Esq. (*pro hac vice*)
   DC Bar No. 978175
   sdavidoff@wc.com
Zachary K. Warren, Esq.
   DC Bar No. 1015292
   zwarren@wc.com
Michelle L. Hood, Esq. (*pro hac vice*)
   DC Bar No. 1034995
   mhood@wc.com
John S. Connolly, Esq. (*pro hac vice*)
   DC Bar No. 230555
   jconnolly@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:  (202) 434-5000
Fax: (202) 434-5029


/s/ Joseph H. Chivers

Joseph H. Chivers, Esq.
PA Bar. No. 39184
THE EMPLOYMENT RIGHTS GROUP
100 First Avenue, Suite 650
Pittsburgh, PA 15222
Tel.: (412) 227-0763
Fax: (412) 774-1994
jchivers@employmentrightsgroup.com


*Counsel for Plaintiffs*

21

## <u>Certificate of Service</u>

I hereby certify that, on this 2nd day of July, 2018, a true and correct copy of the foregoing **Plaintiffs' Motion for Attorneys' Fees and Costs** was served via CM/ECF on all parties of record.

By:  <u>/s/ Zachary K. Warren</u>

Zachary K. Warren, Esq.
DC Bar No. 1015292
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:  (202) 434-5252
Fax: (202) 434-5029
zwarren@wc.com

*Counsel for Plaintiffs*