## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMMY MOZINGO AND JAMIE HOLLOWAY, on behalf of themselves and similarly situated employees, | ) ) ) ) ) | Civil Action No. 2:15-cv-00529 <br><br> Honorable Mark A. Kearney |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| OIL STATES ENERGY SERVICES, L.L.C. f/k/a SPECIALTY TANK SUPPLY, OIL STATES ENERGY SERVICES HOLDING, INC., OIL STATES INTERNATIONAL, INC., | ) ) ) ) ) ) | *ELECTRONICALLY FILED* |
| Defendants. | ) | |

### DEFENDANT'S RESPONSE TO
### PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

William R. Stukenberg
Admitted Pro Hac Vice
Texas Bar No. 24051397
JACKSON LEWIS, P.C.
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: (713) 650-0404
william.stukenberg@jacksonlewis.com

William L. Davis
Admitted Pro Hac Vice
Texas Bar No. 05563800
JACKSON LEWIS, P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
Tel.: (972) 728-3297
davisw@jacksonlewis.com

COUNSEL FOR DEFENDANT
OIL STATES ENERGY SERVICES, L.L.C.

## TABLE OF CONTENTS

**PAGE**

I.     BACKGROUND ................................................................................................ 1

II.    OBJECTIONS TO HOURLY RATES ............................................................. 4

       A.    Failure of Plaintiffs' Proof ................................................................. 4

       B.    Attorney Rates ..................................................................................... 6

       C.    Defendant's Proof ............................................................................... 8

       D.    ERG Paralegal ..................................................................................... 9

       E.    W&C Law Clerk and Paralegals ......................................................... 9

       F.    Other W&C Staff ................................................................................. 10

III.   OBJECTIONS TO HOURS ............................................................................. 11

       A.    Work Related to Settled Plaintiffs ...................................................... 11

       B.    Hours that are Excessive. .................................................................... 12

       C.    Duplicate or Redundant Work ............................................................. 13

       D.    Unnecessary Work – Lack of Nexus ................................................... 14

       E.    Motions that are Unnecessary or Unreasonable .................................. 14

       F.    Vague Entries ...................................................................................... 14

       G.    Clerical Work ...................................................................................... 15

       H.    Damages Spreadsheets ........................................................................ 15

       I.     Block Billing ....................................................................................... 16

J. Summary of Reasonable Hours ................................................................................ 18

IV. COSTS ................................................................................................................................ 19

A. Hotel Costs.................................................................................................................. 19

B. Meals ........................................................................................................................... 19

C. Travel Costs for Plaintiffs and Their Pets.................................................................. 19

D. Internet ........................................................................................................................ 20

E. Banquet Rooms ........................................................................................................... 20

F. Recoverable Costs ....................................................................................................... 20

V. CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n for Retarded Citizens v. Schafer,*
    83 F.3d 1008 (8th Cir. 1996) ..................................................................4

*Babish v. Sedgwick Claims Mgmt. Serv., Inc.,*
    Civ. A. No. 2:07-cv-1539, 2009 U.S. Dist. LEXIS 62963, 2009 WL 2177234
    (W.D.Pa. July 22, 2009)..................................................................6, 8

*Berkoben v. Aetna Life Ins. Co.,*
    2014 U.S. Dist. LEXIS 97664 ..................................................................6

*Brown v. City of Pittsburgh,*
    2010 U.S. Dist. LEXIS 52927 (W.D.P.a May 27, 2010)......................................18

*Calderon v. Witvoet,*
    112 F3d 275, 276 (7th Cir. 1997) ..................................................................19

*Carney v. IBEW Local Union 98 Pension Fund,*
    66 Fed. App'x 381 (3d Cir. 2003)..................................................................12, 13

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2005)..................................................................13

*Changxing Li v. Kai Xiang Dong,*
    2017 U.S. Dist. LEXIS (S.D.N.Y. Mar. 7, 2017) ......................................6

*In re Chevron Corp.,*
    650 F.3d 276 (3rd Cir. 2011) ..................................................................16

*Churchill v. Star Enters.,*
    1998 U.S. Dist. LEXIS 6068 ..................................................................8

*Clark v. Warrior Energy Servs. Corp.,*
    No. 3:16-cv-052 ..................................................................5

*Dado v. Speedway Superamerica LLC,*
    *2009 U.S. Dist. LEXIS 84369 (D. Minn. Sep. 15, 2009)*......................................4

*Dodeka, LLC v. Amroldavis,*
    2010 U.S. Dist. LEXIS 83995 (E.D.N.C. Aug 16, 2010)......................................5

iv

*Dull v. Integrated Prod. Servs., Inc.*,
   No. 2:14-cv-1437 .................................................................................................5, 7

*Dull v. Integrated Production Services*,
   C.A. 2:12-1437 NBF ..................................................................................................7

*Dunkel v. Warrior Energy Servs. Corp.*,
   No. 2:13-cv-695, 164 (W.D. Pa. 2016).......................................................................5

*Evans v. Port Auth. of N.Y. & N.J.*,
   273 F.3d 346 (3d Cir. 2001)......................................................................................13

*Farrar v. Hobby*,
   506 U.S. 103 (1992)....................................................................................................4

*Gortat v. Capala Bros.*,
   795 F.3d 292 (2nd Cir 2015).......................................................................................4

*Haisley v. Sedgwick Claims Mgmt. Servs.*,
   2011 U.S. Dist. LEXIS 111826 (W.D.P.a Sept. 29, 2011) ......................................17

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
   245 F.R.D. 381 (N.D. Iowa 2007) ............................................................................17

*Interfaith Cmty. Org. v. Honeywell, Int'l.*
   426 F.3d 694 (3d Cir. 2005)........................................................................................6

*United States of America ex rel. John Doe v. Pennsylvania Blue Shield*,
   54 F. Supp.2d 410 (M.D. Pa. 1999) ..........................................................................17

*Kindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary
   Corp.*,
   540 F.2d 102 (3d. Cir.1976)......................................................................................17

*Laura P. v. Haverford Sch. Dist.*,
   2009 U.S. Dist. LEXIS 49390 ...................................................................................19

*Loughner v. Univ. of Pittsburgh*,
   260 F.3d 173 (3d Cir. 2001).................................................................................8, 11

*McClean v. Health Sys.*,
   2015 U.S. Dist. LEXIS 181213, *5-6 (W.D. Mos. August 4, 2015) ........................9

*McKelvey v. Sec'y of U.S. Army*,
   768 F.2d 491 (6th Cir. 2014) ......................................................................................4

*McKenna v. City of Philadelphia*,
   582 F. 3d 447 (Fed Cir. 2009)...................................................................................17

v

*Murray v. Gemplus Intern., S.A.*
    217 F.R.D. 362 (E.D.Pa 2003) ......................................................................16

*Napier v. Thirty or More Unidentified Federal Agents, etc.*,
    855 F.2d 1080 (3d Cir. 1988) .......................................................................13

*Nat's Wildlife Fed'n v. Hanson*,
    859 F.2d 313 (4th Cir 1988) ...........................................................................7

*Price v. Aman & Nikhil, Inc.*,
    2014 U.S. Dist. LEXIS 124333 ........................................................................8

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
    674 F.3d 158 (3d Cir. 2012) .........................................................................19

*Ringler v. Norwin Technologies*,
    C.A. 217-423 AJS ...........................................................................................9

*Robinson v. Equifax Info. Servs. LLC*,
    560 F.3d 235 (4th Cir. 2009) ..........................................................................5

*Rougvie v. Ascena Retail Group, Inc.*
    2016 U.S. Dist. LEXIS 99235 (E.D. Pa. 2016) ..............................................11

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
    574 F.3d 852 (7th Cir. 2009) ........................................................................12

*Siegel v. Bloomberg L.P.*,
    2016 U.S. Dist. LEXIS 38799 (S.D.N.Y. Mar. 22, 2016) ...........................5, 9

*United States ex rel. Simring v. Univ. Physician Assocs.*,
    2012 U.S. Dist. LEXIS 187848 (D.N.J Oct 2, 2012) ....................................17

*Sinclair v. Insurance Co. of North America*,
    609 F.Supp. 397 (E.D.P.A. 1984) .................................................................20

*Souryavong v. Lackawanna Cty.*,
    872 F.3d 122 (3d. Cir. 2017) ..........................................................................8

*Taormina v. Heritage Envtl. Servs.*,
    2017 U.S. Dist. LEXIS 142823 (W.D.P.A. Sept 5, 2017) .............................20

*USA Trouser, S.A. de C.V. v. Int'l Legwear Grp.*,
    No. 1:11-cv-00244-MR-DLH, 2014 U.S. Dist. LEXIS 39271 (W.D.N.C. Mar
    24, 2014) ......................................................................................................10

*W. Va. Univ. Hosps., Inc. v. Casey*,
    499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991) ...............................19

*Warren Distrib. Co. v. In Bev USA, LLC,*
 2011 U.S. Dist. LEXIS 19721 (D.N.J. Feb. 28, 2011) ..........................................................19

*Xochimitl v. Pita Grill of Hells Kitchen, Inc.,*
 2016 U.S. Dist. LEXIS 121259 (S.D.N.Y. Sep. 8, 2016) ........................................................6

*Yong Fang Lin v. Tsuru of Bernards, LLC,*
 2011 U.S. Dist. LEXIS 73674 (D.N.J. July 8, 2011) ............................................................19

**Statutes**

28 U.S.C. § 1920 ..........................................................................................................................19

FLSA ...............................................................................................................................4, 7, 9

FLSA Section 216(b) .....................................................................................................................19

<u>DEFENDANT'S RESPONSE TO</u>
<u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>

Defendant Oil States Energy Services, L.L.C files this Response to Plaintiffs' Motion for Attorneys' Fees and Costs, and respectfully shows the Court as follows:

## I.     <u>BACKGROUND</u>

Plaintiffs Sammy Mozingo and Jamie Holloway originally filed this case as a class action on April 22, 2015.  Counsel spent a substantial amount of time attempting to develop the class action, but eventually had to acknowledge that the case could not proceed in such a fashion in light of a settlement in a prior class action.  They were, however, able to assemble 29 plaintiffs to pursue individual claims.  Fifteen of those plaintiffs settled, with agreements approved by the Court, all of which were inclusive of attorneys' fees.  (Dkts. 101, 328, 413).  The current fee request seeks to recover fees and costs which have been released in those settlement agreements.  A significant portion of the approximately $500,000 sought by ERG before W&C took over the case in November of 2016 relates to settled claims.

With respect to the remaining 14 Plaintiffs, there is no question that the Group 1 Plaintiffs achieved substantial success.  In fact, as set forth in the Motion for Remittitur (Dkt. 498) and Motion for New Trial on Group 1 Plaintiffs (Dkt. 496), Plaintiffs Burchik and Eddy received a verdict higher than the damages calculation in the Pretrial Memorandum, a verdict which is not supported by the law or evidence.  The Group 2 Plaintiffs' were far less successful, receiving a verdict far less than what they requested in the Pretrial Memorandum and the jury found against them on the issue of wilfullness.  For example, Plaintiff Steffish's award with liquidated damages was approximately 25% of what he requested in the Pretrial Memorandum.

But when claiming that OSES caused the high fees in this case, W&C omits important facts about the status of the case when W&C became involved: (1) the only depositions OSES requested

1

were those of the plaintiffs, which had been completed at the time W&C took over the case; (2) the discovery deadline had passed and there was no more written discovery or document requests; and (3) Plaintiffs did not seek, nor did they need, any additional information from OSES to take the case to trial. As the Court observed, the case presented at trial was very simple – workers testifying in simple terms what they did at work and providing ballpark estimates of how many hours they worked per week.

So the question is what caused W&C to place 12 timekeepers (many very junior associates) on the file billing over 4,900 hours after all discovery was complete? The answer lies in an important fact not disclosed in the request for fees. W&C put a team of people on developing an untimely damages model first disclosed in March of 2017, nine months after the discovery deadline. (Davis Decl.). They tried to turn a case with a history of 15 reasonable settlements into an $8 million dollar case. Comparing that damages disclosure to the awards and settlements demonstrates far less success:

| **Plaintiff** | **Mar. 2017 Damages Disclosure** | **Award or Settlement** |
|---|---|---|
| George Bolen | $435,471 | $101,698 |
| Don Bratton | $473,403 | $90,768 |
| Michael Burchik | $517,063 | $178,388 |
| Wayne Eddy | $476,910 | $265,688 |
| Matthew Frick | $335,064 | $61,496 |
| Michael George | $198,563 | $58,264 |
| Kari Gordon | $674,955 | $139,710 |
| Stephen Haughton | $699,508 | $104,690 |
| Ryan Karmann | $918,111 | $162,151 |
| Brian Kubiak | $86,109 | $8,364 |
| Jason Lett | $117,161 | $54,262 |
| Robert Pickel | $325,504 | $139,366 |
| Scot Pond | $747,270 | $132,138 |
| Jeffrey Steffish | $850,034 | $100,786 |
| Matthew Williams | $1,173,974 | $175,232 |
| **Total** | **$8,028,787**[1] | **$1,773,016** |

---

[1] This was the damage estimate after ERG had settled 14 of the 29 plaintiffs' claims.

2

(See Dkt. 232, p. 126 – March 15, 2017, W&C Letter with $8 million spreadsheets).  (Davis Decl.).

The $8 million damages model explains why W&C and ERG had 12 timekeepers billing to the file.  Their fee petition makes no mention of the fact that the outcome after W&C took over the case was recovering 22% of the damages model they spent so much time creating.  The 12-person team continued to churn the file after OSES stood on its objections, only to go back to putting on the case that could have been presented by ERG with the evidence in hand as of November of 2016, when the fees to date were only approximately $500,000.  (Davis Decl.).  W&C tries to justify its $1.7 million price tag for this post-discovery venture by blaming OSES.

To add insult to injury, with little objective evidence of participation in this case after November of 2016, Mr. Chivers sat in the back of the courtroom during both trials.  ERG attempts to add on another $250,000 after W&C took over the case in November of 2016 with the only work being observation by Mr. Chivers.

The other explanation for the excessive fee request comes from the staffing of the case itself.  As set forth in the specific objections below, there are an extraordinary number of hours spent by junior attorneys on routine tasks, and it is clear this was a training exercise for W&C's junior associates that W&C asks OSES to fund.

In summary, the millions of dollars incurred after the close of discovery was for obtaining 22% of an inflated damages model through two short trials presenting a handful of witnesses.  The Group 1 trial presentation was primarily the four Plaintiffs testifying about their job duties operating a crane and estimating their hours, and one witness for OSES.  Plaintiffs took the same approach in the Group 2 trial with four witnesses testifying.  OSES called three witnesses, and the testimony was concluded on the fourth day of trail.  The fee request seeking nearly $2 million in

post-discovery billable hours, and over $1 million per trial, is clearly excessive in light of the complexity of the case, the brevity of the trials, and the result achieved.

Where, as here, the purpose of the case was to recover damages, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages *awarded* as compared to the amount *sought*." *Farrar v. Hobby*, 506 U.S. 103 at 114 (1992). Partial success justifies only a partial fee award. *Ass'n for Retarded Citizens v. Schafer*, 83 F.3d 1008, 1012 (8th Cir. 1996). The "'the most critical factor' to a reasonable fee 'is the degree of success obtained.'" *McKelvey v. Sec'y of U.S. Army*, 768 F.2d 491, 495 (6th Cir. 2014) (citing *Hensley*, 461 U.S. at 436). Awarding 22% of the amount achieved at trial would be consistent with an award in a case heavily litigated and ultimately tried to verdict. *Gortat v. Capala Bros.,* 795 F.3d 292 (2nd Cir 2015) (reducing fees in New York city in a seven year FLSA case, resulting in a multi-week trial, from $887,765 to $524,284 because the plaintiffs achieved only a portion of the damages sought). OSES asks the Court to reign in what one court called "vast overkill" in staffing an FLSA case. *Dado v. Speedway Superamerica LLC, 2009 U.S. Dist. LEXIS 84369 *5-6 (D. Minn. Sep. 15, 2009).*

With respect to costs, Plaintiffs seek reimbursement for items clearly not recoverable. Examples are pet sitting fees, banquet room rentals, overpriced internet service exceeding $100 per day, coffee and bagels, and gas money for the Plaintiffs. These items are not recoverable by statute and should be excluded.

## II.   OBJECTIONS TO HOURLY RATES

### A.   Failure of Plaintiffs' Proof

Plaintiffs fail to submit any affidavit or declaration from any other Pittsburgh attorney regarding the rates requested. Courts have held that relying on the applicant's affidavit alone is

grounds for reversal of a fee award.  (*Robinson v. Equifax Info. Servs. LLC,* 560 F.3d 235, 246 (4th Cir. 2009); *Dodeka, LLC v. Amroldavis,* 2010 U.S. Dist. LEXIS 83995, at *5-6 (E.D.N.C. Aug 16, 2010).  The declarations of Chivers and Warren are not sufficient proof, and no additional evidence is offered.  Thus, Plaintiffs fail to carry their burden.

Plaintiffs attempt to circumvent the lack of proof by creatively citing cases stating that the rates of Chivers and Warren have been "approved" by other Courts.  That assertion is not accurate because the cases cited involved unopposed motions to approve settlements and none of the defendants contested the fees.  An unopposed approval of a settlement that has a fee component is not tantamount to finding rates are reasonable in a contested fee petition following trial.  *Dull v. Integrated Prod. Servs., Inc.*, No. 2:14-cv-1437, dkt. 60 (W.D. Pa. 2016).  Indeed, every case cited by Plaintiffs contain no ruling on the reasonableness of fees – they were all uncontested approvals. Moreover, with one exception, Plaintiffs only reference cases in which the attorneys' fees were awarded on a contingent fee basis, meaning there was no consideration of the actual hourly rates but rather if the contingent award from the total settlement was reasonable.  *See e.g.*, *Dunkel v. Warrior Energy Servs. Corp.*, No. 2:13-cv-695, 164 at ¶ 23 (W.D. Pa. 2016).  In the only non-contingent fee case cited by Plaintiffs, the court did not rule that the hourly rates were reasonable - it merely awarded the uncontested amount of fees. *Clark v. Warrior Energy Servs. Corp.*, No. 3:16-cv-052, dkts. 40, 43 (W.D. Pa. 2017).  This is not, as Plaintiffs contend, equivalent to finding a particular hourly rate of any particular attorney to be "reasonable."  In *Siegel v. Bloomberg L.P.,* 2016 U.S. Dist. LEXIS 38799, at *21-22 n.5 (S.D.N.Y. Mar. 22, 2016) the court addressed this issue and found that although counsel cited cases that purportedly "approved" their hourly rates, those cases were "unpersuasive authority" as they merely contained a "lodestar cross-check" against a percentage award.

If Plaintiffs are asking this Court to rely on these "approvals" as precedent, the Court can just apply the contingent fee percentage it has already approved in the orders approving settlements for the 16 Plaintiffs who settled with an approval of fees.  (Dkts. 101, 413).  That percentage is 40%, so if this Court finds that uncontested fee approvals are precedent, the precedent in this case would be to award 40% of the $1,703,155 awarded to the remaining Plaintiffs in this case.  The fee would therefore be $681,262.

## B.   <u>Attorney Rates</u>

The rates requested are far too high for the Pittsburgh market.  Even in New York City, district courts find that "$250 to $450 is appropriate for experienced litigators in wage-and-hour cases." *Xochimitl v. Pita Grill of Hells Kitchen, Inc.,* 2016 U.S. Dist. LEXIS 121259, at *61-62 (S.D.N.Y. Sep. 8, 2016)(surveying recent cases reducing rate of partner with 33 years of experience to $425 per hour); *see also Changxing Li v. Kai Xiang Dong,* 2017 U.S. Dist. LEXIS, at 42, 47 (S.D.N.Y. Mar. 7, 2017)($350 for lawyer who handled over 12 wage cases).  The closest published market rates are from the CLS survey for Philadelphia, but Defendant submits the declarations of two experienced Pittsburgh attorneys regarding reasonable rates in Pittsburgh. (Diulus-Myers Decl., Lamberton Decl.).

Statements in the Warren Declaration regarding what W&C attorneys normally charge is not relevant.  Reasonable hourly rates are determined according to the prevailing market rates in the relevant community.  *Interfaith Cmty. Org. v. Honeywell, Int'l.* 426 F.3d 694, 708 (3d Cir. 2005).  Further, some courts hold that the applicant must provide proof that the firm has actually charged those rates to clients in the relevant community.  *Berkoben v. Aetna Life Ins. Co.*, 2014 U.S. Dist. LEXIS 97664, *53; *Babish v. Sedgwick Claims Mgmt. Serv., Inc.,* Civ. A. No. 2:07-cv-1539, 2009 U.S. Dist. LEXIS 62963, 2009 WL 2177234, *5 (W.D.Pa. July 22, 2009).  Neither

W&C nor ERG have submitted evidence that any client in Pittsburgh or the Western District of Pennsylvania has ever paid them the rates being requested here.

Courts look to rates outside the city where the case is pending only when the complexity and specialized nature of the case "mean that *no attorney*, with the required skills, is available locally." *Nat's Wildlife Fed'n v. Hanson,* 859 F.2d 313, 317 (4th Cir 1988) (emphasis added). The only mention of the availability of Pittsburgh counsel is the declaration of Joe Chivers (who claims he is experienced in FLSA matters and commands $550 per hour).  He summarily offers only that he "explored certain options and discussed the case with other employment attorneys who worked in Pittsburgh."  (Chivers Decl.).  Without mentioning any attorney or firm, he states, "I was unable to find another law firm with the skill, experience, subject-matter expertise, and willingness to take this case through trial."  Defendant submits credible and specific affidavits showing Chivers' vague assertions are false.  (Diulus-Myers Decl.; Lamberton Decl.; Ellis Decl.; Presley Decl.).

Chivers' sworn declaration is at odds with the declaration he filed in the *Dull* case which he claims approved his rates.  (Davis Decl.).  His declaration in that case, filed in February of 2016, states "The majority of my practice is devoted to wage and hour litigation.  I have litigated against companies in almost every industry, and I have litigated against many of the preeminent defense firms in the area of employment litigation.  I have served as class counsel in numerous lawsuits…." *Dull v. Integrated Production Services,* C.A. 2:12-1437 NBF dkt. 60).  Interestingly, much of the declaration he filed in this case is just a cut and paste of the declaration filed in *Dull*. But in order to justify bringing in W&C, he omitted the portion regarding his being capable of handling this case himself.  This is exactly why the courts have found that an applicant's affidavit alone is not sufficient.  The notion that there were no Pittsburgh attorneys available is simply

wrong.  Pittsburgh firms are advertising for these types of cases and there are plenty of firms capable of handling this case.  (Lamberton Decl.; Diulus-Myers Decl.; Ellis Decl.).

## C.    **Defendant's Proof**

When an applicant fails to submit sufficient proof of rates, the Court should look to the hourly rates proposed by the Defendant.  *Babish v. Sedgwick Claims Mgmt. Serv., Inc.,* Civ. A. No. 2:07-cv-1539, 2009 U.S. Dist. LEXIS 62963, 2009 WL 2177234, *5 (W.D.Pa. July 22, 2009). As set forth in the attached Declarations and supporting documents, proof or reasonable hourly rates are as follows:

| Attorney | Graduation Date | PDM Decl. | CL Decl. | Contested Fee Cases |
|---|---|---|---|---|
| JHC | 1983 | $450 | $400 | *Souryavong v. Lackawanna Cty.,* 872 F.3d 122 (3d. Cir. 2017). |
| JWC | 2012 | $250 | $250 | *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173 (3d. Cir. 2001). |
| ZKW | 2012 | $250 | $250 | *Id.* |
| JMP | 2012 | $250 | $250 | *Id.* |
| JSC | 2016 | $250 | $200 | *Price v. Aman & Nikhil, Inc.,* 2014 U.S. Dist. LEXIS 124333, at *3 (W.D. Pa. Aug. 27,2014). |
| MLH | 2015 | $200 | $210 | *Id.* |
| DDW | | $145 | $150 | *Churchill v. Star Enters.,* 1998 U.S. Dist. LEXIS 6068, at *11 (E.D.P.a April 17, 1998). |
| SBD | 2003 | $350 | $350 | *Souryavong v. Lackawanna Cty.,* 872 F.3d 122 (3d. Cir. 2017). |

Moreover, with respect to Jeffrey Chivers ("JWC"), ERG seeks a 2018 rate even though he left the firm and has not worked on the case since December of 2015.  As a 2012 law school graduate, his work in 2015 means he had approximately three years of experience during the time he worked on this case, and his rate should be further reduced to account for his experience for the time he is actually seeking to recover.  With respect to Mr. Warren, ERG similarly requests current rates even though he left ERG in November of 2016.  And W&C seeks Warren's rates based off Warren's current experience level even though many of his hours stretch back to when he was a third year and fourth year attorney.  With respect to Ms. Hood, she is a 2015 graduate, but Plaintiffs' submission makes no mention of her practicing law between 2015 and joining W&C in January of 2016, meaning she is a second year attorney.

8

D.   **ERG Paralegal**

ERG seeks $225 per hour for Jessica Grass.  Joseph Chivers' declaration states that she has been a paralegal at his firm for 15 years.  Absent from the declaration is a statement that $225 per hour is a reasonable rate in the Pittsburgh market.  This omission is likely no accident because on March 1, 2018, Chivers submitted a declaration in *Ringler v. Norwin Technologies,* C.A. 217-423 AJS (dkt. 70) where he states under penalty of perjury that "as of March 1, 2018" the "usual and customary rates charged for cases of this nature" by Ms. Grass are $150 per hour.  (Davis Decl.). Defendant requests that Ms. Grass rate be reduced to no more than $150 per hour.  (Diulus-Myers Decl.).

E.   **W&C Law Clerk and Paralegals**

W&C claims 687 hours for Daniel Whiteley, Milagros Bartolome and Isaac Cohen with rates ranging from $215 to $235 per hour.   The only information provided in the Warren declaration is job titles - stating Whiteley was a "Summer Associate" and Bartolome and Cohen are paralegals.  No evidence is submitted regarding their education, work experience, training or qualifications.  The only information provided regarding Whiteley, Bartolone and Cohen is job titles.  Defendant objects to any award for their time without any foundation to support the claim that clients in the Pittsburgh market would pay an hourly rate for their services.

If the Court was inclined to speculate regarding the summer associate Whiteley, the CLS survey provides that Philadelphia rates for law students range from $90 to $145 per hour. Defendant requests that if any award is allowed, the rate should be reduced to $100 per hour. (Diulus-Myers Decl.).

The rates requested for paralegals Bartolome and Cohen are higher than New York City rates for FLSA cases.  *Siegel v. Bloomberg L.P.,* 2016 U.S. Dist. LEXIS 38799, at *21 (S.D.N.Y. Mar. 22, 2016)($100-125 for paralegals in FLSA cases); *McClean v. Health Sys.,* 2015 U.S. Dist.

9

LEXIS 181213, at *5-6 ($45-$150 for paralegals in complex wage cases).  The CLS Philadelphia rates for paralegal are $115 to $140 for Paralegal I and II, and $140 to $165 for Senior and Supervisory Paralegals. (Diulus-Myers Decl.).   Since the Warren declaration provides no information, Defendant attempted to find information about them from their LinkedIn profiles.  If those are accurate, Bartolome and Cohen indicate they have approximately two years of experience as paralegals (Diulus-Myers Decl.).  Defendant requests that the Court award no more than $125 per hour for Ms. Bartolome and Mr. Cohen.

**F.    Other W&C Staff**

W&C claims 325.65 hours for Peter Shanz, Felicia Gleaton, Gerod Beulah, and Mohamed Elbarbary.  The Warren declaration provides no information regarding them other than in paragraph 20 where he states they are "timekeepers" and their job titles of Case Manager, Litigation Support Project Manager, and Litigation Support Analyst.  With job titles as the only evidence submitted, Plaintiffs ask for hourly rates ranging from $215 to $260 per hour.  This is higher than what courts have awarded for attorneys who submitted extensive affidavits regarding their education and experience.

The fact that the CLS survey provides no data for these types of jobs suggests that these are not billable workers, and instead overhead in Philadelphia.  Time spent on cases by counsel's staff who are not paralegals is considered overhead and not recoverable, and these timekeepers are clearly overhead. *USA Trouser, S.A. de C.V. v. Int'l Legwear Grp.,* No. 1:11-cv-00244-MR-DLH, 2014 U.S. Dist. LEXIS 39271, at *35 n.6 (W.D.N.C. Mar 24, 2014).  In Pittsburgh, they would be considered overhead and in any event not billable at higher rates than junior attorneys and paralegals.  (Diulus-Myers Decl.).

### III.   OBJECTIONS TO HOURS[2]

In calculating the hours reasonably expended, the District Court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant or otherwise unnecessary." *Loughner v. The University of Pittsburgh,* 260 F.3d 173, 178 (3rd Cir. 2001).  In *Rougvie v. Ascena Retail Group, Inc.* 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. 2016), this Court provided an extensive analysis of the reasonableness of a contested attorneys' fee petition, unlike the uncontested settlement approval cases cited by Plaintiffs.  Despite the fact that *Rougvie* involved what the Court described as "extraordinary work" representing 18.4 million consumers, the Court reduced the fee award based on a number of factors which are also present here.

### A.   Work Related to Settled Plaintiffs

The case began with 29 Plaintiffs.  The parties attended a settlement conference with Judge Bissoon on June 23, 2016, and reached an agreement to settle almost half of the claims in this case. (Dkt. 93).  Settlement agreements were signed by 14 Plaintiffs well before the summary judgment proceedings about which the Warren declaration complains.  The ERG fee statements specifically

---

[2] OSES specifically objects to the following categories of tasks for which Plaintiffs seek recovery: (1) unnecessary work; (2) work on behalf of settled plaintiffs; (3) excessive time on deposition designations; (4) excessive time on motions in limine; (5) excessive time preparing exhibit lists and trial exhibits; (6) excessive time on jury instructions; (7) unnecessary time as jury observers; (8) unnecessary work with no nexus to the case; (9) excessive time on a motion for extension; (10) travel time; (11) vague entries; (12) clerical work and/or administrative work; (13) work expended on damage spreadsheets that were excluded, (14) work spent on settled claims, and (15) and block billing.  Due to page constraints, OSES cannot go item by item to explain the excessive nature of the work performed for each of these tasks.  Instead, the Declaration of Davis breaks down the excessive amount for each task along with a reasonable number of hours that should have been spent.  After determining the amount of excessive/unrecoverable time for each of the foregoing tasks, Davis determined the percentage of time that is not recoverable for that category of task.  The reduction in hours was then applied proportionately across all timekeepers for that task.  The attachments to the Davis Declaration detail the total billed for the task, the total amount of hours to be reduced, and then allocates a pro rata reduction for all time keepers for that task, to determine the amount of reduction per timekeeper for task.  The total or summary of reductions for all unrecoverable hours by timekeeper are also submitted.  Because of the constraints of page limits, this data cannot be analyzed in full here, and the Response simply provides examples for the Court's consideration, but OSES's detailed and specific objections, with supporting evidence, are detailed in the Davis Declaration.

reflect work performed for settling plaintiffs Mozingo, Holloway, Walters, Pritchett, Lewis, and Duplechain. The names of other settling Plaintiffs were scrubbed from the entries, but it is clear that time is still being claimed for work on their claims. Counsel has attempted to mask the work by block billing and using the term "clients" instead of referring to them by name.

Two Plaintiffs (Frick and Kubiak) settled with a release of fees and costs after W&C became involved - Brian Kubiak on 9/19/17 and Matthew Frick on 2/20/18. (Davis Decl.). Their names have been scrubbed from the ERG fee statement, but as with the ERG statements, work related to their claims has been masked with block billing and vague descriptions.

**B.**   <u>**Hours that are Excessive.**</u>

The fact that two law firms are claiming nearly 7,000 hours for 14 people working on this case raises serious concerns regarding excessive billing, especially considering that they seek over $1,000,000 per trial, and each trial lasted less than one week. *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.,* 574 F.3d 852, 858 (7th Cir. 2009)("[Overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seeks fees."); *see Carney v. IBEW Local Union 98 Pension Fund*, 66 Fed. App'x 381, 387-88 (3d Cir. 2003).

Although the instances of excessive billing are detailed in the attached declarations and schedules, just one example is Ms. Hood's billing on the Group 2 motions in limine. Five motions in limine were filed for Group 1 (Dkts. 252, 253, 254, 255 and 265). The Court ruled on those motions, and the rulings were to carry over to the Group 2 and Group 3 trial. (Dkts. 279, 280, 287, 288, 290). W&C seeks to recover 65 hours of Ms. Hood's time and over $20,000 for the Group 2 motions in limine, with the only new issue raised being a 5-page motion relating to Haughton's fraudulent representations to the bankruptcy court. (Dkt. 333).

Similarly, Plaintiffs spent 1,150 hours on "exhibits" relating to trial, even though both trials included only 133 exhibits, many of which were duplicates. (Davis Decl.). Plaintiffs also spent 336 hours drafting jury instructions, which were virtually identical for the trials and much of the content came from pattern jury instructions. (Davis Decl.). Plaintiffs spent 310 hours on preparing deposition designations for trial, which involved designations totaling less than 100 pages of testimony. (Davis Decl.). That comes to 3.1 hours *per page* of testimony offered. And 472 hours of research on basic issues such as "invoking the rule." *Id.* Another example is time spent researching "right to jury in equitable action" after the case had been on the jury docket for over a year. (Davis Decl.).

There are numerous other examples of unnecessary work detailed in the Davis Declaration and supporting exhibits.

## C.    Duplicate or Redundant Work

There are substantial duplications of work in both the ERG and W&C statements. Fees for duplicative work should not be awarded. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys who merely duplicated work, however noble their intentions, however diligent their efforts, and however outstanding their product-will not be entitled to compensation"); *Napier v. Thirty or More Unidentified Federal Agents, etc.,* 855 F.2d 1080, 1094 (3d Cir. 1988) (attorneys "cannot receive counsel fees" for duplicating the efforts of co-counsel).

Although the duplications are detailed in the Davis Declaration and attachments, one example the Court observed was Joseph Chivers sitting in the back of the courtroom (on Defendant's side to give the jury the impression that he was part of Defendant's legal team). (Davis Decl.). With three W&C lawyers at counsel table and other W&C attorneys and staff billing hours back in DC, Mr. Chivers' time spent watching a trial is not recoverable.

13

Similarly, although sitting at counsel table, Ms. Hood sat as an observer at the Group 1 trial and Mr. Connolly sat as an observer at the Group 2 trial. They did not present or cross-examine any witnesses, or argue any issue to the Court.  (Davis Decl.).  While these junior associates gained experience observing a trial, OSES should not have to pay for such training.

D.    **Unnecessary Work – Lack of Nexus**

Counsel also spent unnecessary time compelling the production of, and reviewing, thousands of emails, which were completely irrelevant and not used at trial. (Stukenberg Decl.). Mr. Warren demanded that OSES search tens of thousands emails, and produce thousands emails, even though OSES assured Plaintiffs that the emails lacked any relevance to the case.  As can be seen from the Group 1 Exhibit List (Dkt. 374), only two emails were offered a trial (Ex. Nos. 137 and 143).  Only one email was offered at the Group 2 trial. (Dkt. 444, Ex. 160).  There are a number of other entries detailed in the declarations attached.

E.    **Motions that are Unnecessary or Unreasonable**

Substantial time was billed trying to obtain a "partial final judgment" immediately after the Group 1 trial and on a motion for collateral estoppel after the Group 2 trial.  (Davis Decl.). The Court was clear in the Case Management Conference and in the Case Management Order that the case was proceeding as a single lawsuit (Dkts. 222 and 224) and there would be no final judgment until after the third trial so why research obtaining partial final judgment?

F.    **Vague Entries**

There are a substantial number of vague entries such as "team meeting" and "review pleadings."  (Davis Decl).  These entries would be problematic in a single plaintiff case, but in a case where 16 of the 29 plaintiffs settled with releases of claims for fees and costs, vague entries appear to have been used to mask the fact that time is being requested for work relating to settled claims.  The timing of the entries also corresponds to instances of suspected duplication of work

14

by multiple attorneys and the use of this case to train junior attorneys.  Additional vague entries are detailed in the declarations attached.

**G.**  **Clerical Work**

As set forth above, the W&C records have time billed for Daniel D. Whiteley, Peter Shanz, Milagros Bartolome, Isaac Cohen, Felicia Gleaton, M. Elbarary, and G. Beulah, with no evidence regarding their background, experience or qualifications sufficient to demonstrate that a fee-paying client would pay their hourly rate.  With no information provided about them other than job titles indicating they are not attorneys, Plaintiffs seek an award of 336.9 hours and a total of $80,758.75. (Davis Decl.).

Defendant was able to observe Milagros Bartolome pull up exhibits on the screen at trial and assist with exhibits, so no reductions were requested for work observed.  (Davis Decl.).  But for all of these individuals, there are time entries prior to trial such as "update pleadings" and "prepare documents" that are clerical and not billable.  (Davis Decl.).  In addition, contrary to the testimony of several Plaintiffs that they reviewed their tally books and other records to come up with hours estimates, substantial time was billed by these W&C employees for "reviewing hours records."  (Davis Decl.)  Other clerical work is detailed in the declarations attached.

**H.**  **Damages Spreadsheets**

Defendant has repeatedly complained about Plaintiffs refusing to answer interrogatories or questions in depositions regarding their hours worked and damages prior to the discovery deadline. Some of the Plaintiffs were instructed by counsel not to answer questions in depositions as to who authored the spreadsheets.  Defendant objected to the use of law firm-created spreadsheets first produced nine months after the discovery deadline.  (Dkts. 230, 238, 248, 293, 321).  The ERG and W&C billing records prove Defendant's point regarding how ERG had the Plaintiffs tally

books necessary to create a damages model prior to the discovery deadline, but never disclosed it. (Davis Decl.).

When W&C took over the case, it had a number of different people looking at the same records, creating impressive spreadsheets containing the inflated $8 million damages model, but still delayed disclosing it until five months after it took over the case. (Davis Decl.).  When asked about the authors in depositions, W&C attorneys instructed the Plaintiffs not to answer.  (Davis Decl). After instructing Plaintiffs to refuse to answer in depositions, W&C now submits fee statements with the names of the authors, and asks that Defendant pay for over 516.5 hours of work totaling over $156,853.

Defendant objects to the fees of W&C staff who created this untimely damage model.  First, this Court has held Defendant to a high standard regarding the sufficiency of disclosures even when Defendant did not refuse to answer.  (Dkt. 430 – Order Granting Motion to Exclude Certain Testimony of Rhonda Totten).  Second, this is a classic case of the attorney-client privilege as both a sword and a shield. *See*, *In re Chevron Corp.*, 650 F.3d 276, 287 (3rd Cir. 2011) (allowing plaintiffs to shield related documents when unfavorable but waive privilege when favorable would be "an abuse that courts have discouraged.") *See also, Murray v. Gemplus Intern., S.A.* 217 F.R.D. 362, 367 (E.D.Pa 2003).  Plaintiff claims in discovery that the names of the authors were privileged, but now discloses them claiming that Defendant now gets to learn who they are and pay for their time up to $260 per hour.  Moreover, equitably Plaintiffs should not recover for time spent on a discovery task after the discovery period closed, and that was ultimately excluded at trial.

## I.   **Block Billing**

Both the W&C and ERG fee statements contain hundreds of instances of block billing. Some do not matter for purposes of evaluating fees.  For example, Defendant is not objecting to

block billing by trial counsel on days in trial.  Defendant does object to block billing when it is used to hide the fact that some of the work related to settled plaintiffs, the unsuccessful PMWA claim, and duplication of work by multiple people.  For example, Defendant filed individual motions for summary judgment along with individual concise statements of fact for each of the 15 plaintiffs. (Davis Decl.)  There can be no recovery for preparing responses with respect to settled plaintiffs.  The block billing lumps the work for all plaintiffs together and sometimes includes other work for settled plaintiffs, which warrants a reduction.  (Davis Decl.), *See, United States ex rel. Simring v. Univ. Physician Assocs.,* 2012 U.S. Dist. LEXIS 187848, at *36-30 (D.N.J Oct 2, 2012) (court found block billing was too vague and could not determine which activity pertained to each defendant counsel represented in the action.); *see also, United States of America ex rel. John Doe v. Pennsylvania Blue Shield,* 54 F. Supp.2d 410, 415-16 (M.D. Pa. 1999) (block billing not permitted if the court cannot determine "whether the hours reasonably correlate to all of the activities performed."); *see e.g., Kindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d. Cir.1976).

Another example of block billing relates to work on the unsuccessful class and collective action claims, and the PMWA claims.  (Davis Decl.).  Plaintiffs' time records do not segregate the time spent on the collective action and class action claims from the individualized claims or the PMWA claims.  (Davis Decl.).  The time spent on unsuccessful class/collective action claims and claims under the PMWA must be excluded as "excessive, redundant, or otherwise unnecessary." *McKenna v. City of Philadelphia*, 582 F. 3d 447, 455 (Fed Cir. 2009). The remedy for block billing is a percentage reduction. *Ideal Instruments, Inc. v. Rivard Instruments, Inc.,* 245 F.R.D. 381, 390 (N.D. Iowa 2007) (25% reduction for block billing), *See, Haisley v. Sedgwick Claims Mgmt. Servs.,* 2011 U.S. Dist. LEXIS 111826, at *39-42 (W.D.P.a Sept. 29, 2011) (reducing excessive block billing fees by 50% in light of plaintiff's counsel's experience and lack of calculations that

17

pointed to specific time entries.), *See also*, *Brown v. City of Pittsburgh,* 2010 U.S. Dist. LEXIS 52927, at *43 (W.D.Pa May 27, 2010) (despite plaintiff's attorney reducing 16 block billing entries, the court still reduced overall fees by 50% for excessiveness.).

Based on these pleadings and time entries, Defendant proposes, in total, a 35% reduction of block billed entries, limited to only those entries that were block billed.

**J.     Summary of Reasonable Hours[3]**

Based on the foregoing, and as detailed in the Davis Declaration along with the supporting exhibits to the Davis Declaration, below represents the hours that are properly recoverable in this matter:

| Timekeeper | Hours Claimed | Reductions | Recoverable Hours |
|---|---|---|---|
| DDW | 44.25 | 41.92 | 2.33 |
| FRG | 34.65 | 27.03 | 7.62 |
| GWB | 31 | 24.20 | 6.80 |
| INC | 252 | 245.48 | 6.52 |
| JHC | 297 | 89.22 | 207.78 |
| JLG | 164.25 | 23.53 | 140.72 |
| JMP | 139.35 | 88.02 | 51.33 |
| JSC | 480.65 | 157.69 | 322.96 |
| JWC | 329 | 41.27 | 287.73 |
| MB | 391 | 390.44 | 0.56 |
| MIE | 41 | 34.37 | 6.63 |
| MLH | 1276.9 | 631.57 | 645.33 |
| PJS | 219 | 219 | 0.00 |
| SBD | 330.4 | 133.76 | 196.64 |
| ZKW | 2894.15 | 1,702.07 | 1,192.08 |

(Davis Decl.¶ 63).

---

[3] Again, the details on the basis for the reductions, including total time expended and amount that is not recoverable, by task, is detailed in the Davis Declaration.

## IV.   COSTS

The Third Circuit in *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 164 (3d Cir. 2012) held that 28 U.S.C. § 1920 defines the full extent of a federal court's power to shift litigation costs absent express statutory authority; *citing W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991).  Section 1920 only allows for the recovery of specific categories of costs.  Section 216(b) of the FLSA does not provide authorization to expand the taxable costs beyond what is enumerated in 28 U.S.C. § 1920. *See,Yong Fang Lin v. Tsuru of Bernards, LLC,* 2011 U.S. Dist. LEXIS 73674, at *9 (D.N.J. July 8, 2011).  Plaintiffs seek substantial costs beyond those allowed by statute.

### A.   Hotel Costs

Plaintiffs hired a Pittsburgh firm (ERG) to pursue this case, but then elected to bring in additional DC counsel.  There is no authority supporting an award of hotel costs where Plaintiffs choose to bring in extra attorneys and paralegals from out of town when they have a Pittsburgh firm, especially considering there are numerous competent wage and hour attorneys in Pittsburgh (beyond ERG) who could have taken the case..

### B.   Meals

Attorneys cannot seek to recover their own meal expenses as costs.  Meals are not listed as a recoverable cost under § 1920, and if recoverable at all, they are already included in a reasonable attorneys' fee award.  *See Warren Distrib. Co. v. In Bev USA, LLC*, 2011 U.S. Dist. LEXIS 19721 at *20 (D.N.J. Feb. 28, 2011); *Laura P. v. Haverford Sch. Dist.*, 2009 U.S. Dist. LEXIS 49390, at *9.

### C.   Travel Costs for Plaintiffs and Their Pets

The Plaintiffs chose to file suit in Pittsburgh.  The fact that they chose to live in another city does not provide a basis for recovery of their travel costs.  *See Calderon v. Health Sys.*, 112

F.3d at 276.  One of the Plaintiffs seeks reimbursement for hotel costs incurred for his pet, and

OSES should not be on the hook for such pet fees. *See, Sinclair v. Insurance Co. of North America*,

609 F.Supp. 397, 409 (E.D.P.A. 1984), *see also, Taormina v. Heritage Envtl. Servs.,* 2017 U.S.

Dist. LEXIS 142823, at *18-19 (W.D.P.A. Sept 5, 2017).

**D.     Internet**

Plaintiffs claim over $100 per day for "War Room Internet Charges" as reflected on

invoices from Encore Technologies.   (Davis, Decl.).   Beyond the fact that internet is non-

recoverable office overhead, during these same timeframes, Joe Chivers, who maintains an office

in Pittsburgh presumably with internet, is claiming he is working on the case.  No explanation has

been provided as to why the internet at his office was not sufficient and counsel needed internet

services costing over $100 a day.

**E.     Banquet Rooms**

Also embedded in the "Hotel" invoices are charges for banquet rooms in Pittsburgh.  The

total reflected in the invoices is over $14,000.  (Davis Decl.). Once again, Joe Chivers and his ERG

office is located at 100 First Avenue, Suite 650, in Pittsburgh.  If he was working on the case as

represented, there was no need to rent banquet rooms in Pittsburgh.

**F.     Recoverable Costs**

Excluding unrecoverable costs, such as pet sitters and internet, results in total recoverable

costs of $57,047.

**V.     CONCLUSION**

Based on the foregoing, a reasonable award on a contingency basis should not exceed

$681,262.  Alternatively, an award based on reasonable rates, reasonable hours, and recoverable

costs should be no more than $806,871.85 ($749,824.85 fees and $57,047 costs).

20

Dated: July 20, 2018

Respectfully submitted,

/s/ William L. Davis
William R. Stukenberg
Admitted Pro Hac Vice
Texas Bar No. 24051397
JACKSON LEWIS, P.C.
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: (713) 650-0404
william.stukenberg@jacksonlewis.com

William L. Davis
Admitted Pro Hac Vice
Texas Bar No. 05563800
JACKSON LEWIS, P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
Tel.: (972) 728-3297
davisw@jacksonlewis.com

COUNSEL FOR DEFENDANT
OIL STATES ENERGY SERVICES,
L.L.C.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Defendant's Response to Plaintiffs' Motion for Attorneys' Fees and Costs was electronically filed with the clerk of the U.S. District Court, Western District of Pennsylvania, on July 20, 2018, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

Zachary K. Warren
Samuel Bryant Davidoff
Michelle L. Hood
John S. Connolly
Williams & Connolly LLP
725 Twelfth Street NW
Washington, DC 20005
Tel.: (202) 434-5252

Joseph H. Chivers
The Employment Rights Group
100 First Avenue, Suite 650
Pittsburgh, PA 15222
Tel.: (412) 227-0763

/s/ William L. Davis
William L. Davis

21