## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SAMMY MOZINGO, *et al.*** | **: CIVIL ACTION** |
| | : |
| | : |
| **v.** | **: NO. 15-529** |
| | : |
| **OIL STATES ENERGY SERVICES,** | : |
| **L.L.C., *et al.*** | : |

## MEMORANDUM

**KEARNEY, J.**                                                 **September 18, 2018**

Twenty-nine oil field employees treated as exempt from federal overtime laws sued their employer over novel overtime exemption issues. The employees hired a well-known Pittsburgh wage and overtime rights law firm. The employer hired Texas lawyers. All counsel vigorously presented strong positions and properly disputed dozens of legal issues.

After two week-long trials for four similarly situated oil field employees each, the juries returned verdicts for the eight employees who went to trial. Under federal law, the employees' counsel are entitled to an award of reasonable fees and costs paid by the employer. The employer objects to the requested fees and costs, largely arguing they are unreasonable because the lead Pittsburgh pre-trial lawyer left before trial for a large Washington, D.C. law firm and then many of his Washington colleagues fully staffed and pursued the case at Washington hourly rates.

Measuring an attorney's work through the prism of the relatively limited length of the week-long trials is unfair. Good lawyers seek and marshal all material information and narrow issues for the jury. The relatively limited amount of trial time in the courtroom is not a definitive

barometer of the necessary legal work by a lawyer or paralegals assisting her. Lawyers must prepare for every possible contingency in a jury trial with cutting-edge wage issues in the energy industry. We expect the employees' counsel to strenuously work to maximize the verdict value, including revising and proving larger damages models. And we expect the employer will strenuously work to limit damages. We cannot discount the lawyers' efforts because the jury awarded some, but not all, of the overtime wages included in an extensively prepared (and challenged) damages model.

After parsing through hundreds of pages comprising the employer's many objections, we reject most, but not all, of the employer's objections. We find merit in its objections based on hourly rates not tied to this legal community and limited merit in challenging certain hours and costs. In the accompanying Order, we grant the employees' motion for reasonable fees and costs in large part defining the attorney's fees and costs due for efforts in this Court to date.

**I.    Background**

Before Spring 2015, oil field workers in Texas filed a class action alleging their former employer Oil States Energy Services, LLC misclassified them as exempt from overtime laws. In Spring 2015, twenty-nine frac hands, grease operators, and crane operators opting out of the Texas class action sued Oil States in this District for overtime wages under the Fair Labor Standards Act and Pennsylvania Minimum Wage Act. They claimed Oil States misclassified them as exempt from overtime payments and failed to pay them overtime wages.

The twenty-nine employees hired Pittsburgh's The Employment Rights Group LLC to represent them in this District. Oil States hired experienced wage and overtime lawyers from Texas. Because each employee brought their claim individually, Oil States sought discovery specific to each employee and deposed each employee. Discovery originally closed in early

2

Summer 2016. Immediately before the dispositive motion deadline, fourteen employees settled their claims with Oil States. Oil States and the remaining fifteen employees cross-moved for summary judgment. Oil States submitted fifteen separate motions for summary judgment with tailored statements of undisputed facts to each remaining employee. Upon reassignment to us, we denied the pending motions for summary judgment in November 2016 as genuine issues of material fact required a jury's consideration.[1]

On the same day we denied summary judgment, Zachary K. Warren – the employees' lead trial counsel by January 2016 - left Pittsburgh and The Employment Rights Group and joined Williams & Connolly LLP, a large law firm based in Washington, D.C.[2] His old law firm now claims it could not find anyone to continue representing the employees once Attorney Warren left.[3] Its principal Joseph H. Chivers, Esquire swears his "small firm… did not have the resources or capabilities to take a case of this magnitude all the way through trial."[4] We do not find his statement credible given the work done by The Employment Rights Group in this District and in this case.[5] The Employment Rights Group had already defeated summary judgment. We find it hard to believe Attorney Chivers – a lawyer with over thirty years of wage and hour experience commanding $550 an hour – could not try individual overtime cases. We have no affidavit from an employee suggesting he would not continue to pursue his case with Attorney Chivers. We find it much more likely Attorney Warren and his old employer agreed he would continue representing the employees given his knowledge of the case. But, in joining a new firm, Attorney Warren decided to seek more help. Upon arriving in Washington, he invited his new Washington colleagues from Williams & Connolly to assist him. Attorney Warren remained lead trial counsel. At first, Attorney Warren asked permission for one other Washington lawyer to join him.[6] He eventually sought *pro hac vice* admission for three other

3

Washington colleagues. We have no evidence Attorney Warren reached an agreement with either the employees or his new employer Williams & Connolly to charge its lawyers' time at rates consistent with lawyers in this District.

After we denied dispositive motions, employees Matthew Frick and Brian Kubiak settled with Oil States. We divided the remaining thirteen employees into three trial groups and scheduled three trials. We divided the trial groups based on the employees' job titles at Oil States.[7] Before the group one trial, Oil States moved to exclude all the employees' evidence of damages at trial because the employees submitted to Oil States a revised damages model after the discovery deadline. Oil States argued the last minute revision of damages before trial caused incurable prejudice. Finding both the employees and Oil States shared blame for the untimely disclosure of the revised damages calculations and additional discovery could cure prejudice to Oil States, we denied Oil States' motion and allowed supplemental discovery, including deposing the remaining thirteen employees, regarding the revised damages calculations.

We repeatedly addressed – and sometimes re-addressed – complex and novel issues on whether these oil field employees are exempt under the Act. Immediately before the group one trial, we granted leave for the parties to address a dispositive issue raised in the proposed jury instructions. Oil States moved to dismiss the employees' claims under the Pennsylvania Minimum Wage Act. Oil States argued Pennsylvania law exempted Oil States from the requirements under the Minimum Wage Act. We agreed with Oil States and the parties submitted revised jury instructions and verdict slips omitting the Pennsylvania Minimum Wage Act claims.

We held the group one trial in October 2017. Group one consisted of four crane operators. Attorney Warren served as lead trial counsel. The Employment Rights Group did not

4

participate in the trial other than Attorney Joseph Chivers sat in the gallery for most but not all of trial. The jury found Oil States liable for failing to pay the four crane operators overtime and found its failure willful under the Act.

We scheduled the group two trial for late-February 2018. A week before the start of the group two trial, we rescheduled trial for mid-March 2018 after learning a family emergency would prevent Oil States' corporate representative from attending trial. By this time, Williams & Connolly had already set up in a Pittsburgh hotel room and needed to break down operations and move back to Washington for another month.

We held the group two trial in mid-March 2018. Group two employees consisted of four grease operators. Attorney Warren again served as lead trial counsel and The Employment Rights Group did not participate in the courtroom presentation. The jury found Oil States liable for failing to pay four grease operators overtime but did not find Oil States willfully violated the Act. After the group two trial, Oil States and the group three employees settled their claims.

After each trial, the group one and two employees moved for liquidated damages under the Act arguing Oil States failed to adduce evidence of its good faith and reasonable efforts to determine whether it should pay overtime to the employees. We granted both motions for liquidated damages.

In Spring 2018, we entered judgment against Oil States and in favor of the eight employees succeeding after trial. Oil States moved for a new trial and to remit the jury's award of damages in the group one and group two trials. Oil States also renewed its motion for judgment as a matter of law in the group one trial. We denied Oil States' post-trial motions and our Orders (and possibly Orders pre-dating our involvement) are now on appeal.

5

The employees now move for attorney's fees and costs under the Act. They ask us to order Oil States pay: Williams & Connolly $1,664,747 in fees for 4,956 hours and $112,124.34 in costs; and, The Employment Rights Group LLC $765,337.50 in fees for 1,968 hours and $28,162.39 in costs. Attorney Warren presents a fulsome affidavit and detailed invoice supporting Williams & Connolly's requested hours and costs. Attorney Joseph Chivers similarly presents a fulsome affidavit and detailed invoice supporting The Employment Rights Group's hours and costs. Neither law firm presents comparator affidavits to show the reasonableness of their hourly rates in this community. Instead, they ask we accept fees awarded in other cases where all parties agreed to pay the requested fees. We face a much different situation today as we must carefully review Oil States' many objections to the requested fees and costs.

## II.     Analysis

Section 216(b) of the Fair Labor Standards Act authorizes an award of reasonable attorneys' fees and costs of the action to a prevailing party.[8] Under the Act, our court of appeals instructs us to use the lodestar formula to determine the reasonableness of fees.[9] Under the lodestar formula, we multiply the number of hours reasonably expended by a reasonable hourly rate.[10] We have two examinations: reasonable number of hours and reasonable hourly rate.

The party seeking attorney's fees bears the burden to prove its request for fees is reasonable.[11] "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'"[12] The "party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."[13] We may reduce a fee award based only on objections raised.[14] Once objections are raised, we have "a great deal of discretion to adjust the fee award in light of those objections."[15]

6

As our court of appeals reminded us earlier this month, district courts "have a positive and affirmative function in the fee fixing process, not merely a passive role" and we should "review the time charged, decide whether the hours set out were reasonably expended for each of particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[16]

### A. We calculate reasonable hourly rates in this community, not in Washington.

Oil States objects to employees' counsels' offered hourly rates. Oil States argues employees' counsel failed to support their offered fees with evidence, apart from self-serving affidavits, and therefore failed to meet its burden demonstrating its hourly rates are reasonable. Oil States offers proof employees' counsels' offered rates are unreasonable relative to the prevailing rates in the Pittsburgh legal market.

Employees' counsel cite to case law from our District where their offered hourly rates have been previously approved. They also cite to affidavits submitted in entirely separate cases in our District where attorneys attest to similar or higher rates as being consistent with the prevailing market rate in Pittsburgh for "employment attorneys." Employees' counsel argue the affidavits submitted by Oil States concluding the offered hourly rates are excessive do not account for experience of counsel, only years of practice. The employees' proof is based on other cases or in uncontested fee applications.

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."[17] "The court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[18] "The prevailing party 'bears the burden of establishing by way of satisfactory evidence, 'in addition to

7

[the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard."[19] The prevailing market rate is measured at the time of the fee petition is submitted, not at the time of services performed.[20] A district court must determine an appropriate hourly rate based on the factual record and should not base its determination on other court's determinations of reasonable hourly rates for the same attorney.[21]

We are faced with a claim for hourly rates without proof as to the reasonableness of these rates other than counsel agreeing to the rates in other cases. We cannot give complete deference to hourly rates approved by courts without objection. Just because the parties agree to an hourly rate does not make it the customary hourly rate in this community. Instead, we need evidence of the hourly rates based on analysis and affidavits from comparators to provide evidence of the proof of rates in this District and particularly in this type of complex wage case. Courts using the parties' proposed rates as a lodestar comparison in contingency cases is not the same as evaluating the reasonable hourly rates in a contested application for fees. By the same token, we are mindful of judges' obligations in evaluating lodestar comparisons to ensure the calculation of the lodestar is based on reasonable rates in the federal litigation in which counsel seeks a fee. We must also examine the attorneys' respective experience along with their years at the Bar and their ability to mount this kind of case.

Oil States argues the requested hourly rates are too high for this community. We agree using rates charged by attorneys in Washington is not particularly helpful in determining the rates charged in this community. While the employees presumably elected to proceed with Attorney Warren's new firm in Washington, as is their right, there is no basis to find they could not have proceeded with The Employment Rights Group which had already defeated multiple summary judgment motions.

8

After considering the variety of factors and having the benefit of watching the employees' counsel both in pretrial and during two trials, the $375 hourly rate sought to be charged by Attorney Warren is a fair and reasonable market rate based on his experience. He exceeded the skill level we may otherwise expect of someone of his level of experience and his requested $375 hourly rate is fair. He is a talented trial lawyer and his rate is reasonable in this District. While we did not watch Attorneys Joseph Chivers or Jeffrey Chivers work in Court, their requested hourly rates given their experience, based on other Judges' review of their rates in this District and under the obligations mandated in a lodestar analysis, are reasonable market rates.

But employees' counsel do not provide us with evidence warranting the much higher rates for associates, summer associates, case managers, litigation support persons and paralegals in either Washington or in Pittsburgh. We have no basis to find these attorneys and paralegals are billing at reasonable hourly rates based on rates in other cases and not relative to this case. Absent proof relating to this case, we are left with examining the market including cases cited to us by the employer and the employees. As you might expect, Oil States cites cases from years ago to set the hourly rates in this community. We accept these rates from this community as a baseline, but we must account for the present market place. We also award fees based on the present rate, recognizing these lawyers worked for many months without payment and should be compensated for time at their present rates. Neither side offers persuasive evidence of the reasonable rates in this community today other than the actual rates charged by Attorneys Chivers and Warren in this District.

We also look to the schedule of attorney's fees relied upon by Community Legal Services in Eastern Pennsylvania, recognizing those rates in a larger city may be lower than a commercial

9

lawyer would charge a client for a complex protracted employment case. But the employees have not offered much more. The Community Legal Services rates in Eastern Pennsylvania are higher than Attorney Joseph Chivers' hourly rate but lower for Attorney Warren.

We cannot simply accept Washington billing rates as being reasonable in Pittsburgh. The employees' counsel do not offer evidence allowing us to make this leap. Exercising considerable discretion, we base the reasonableness of hourly rates upon blended rates for attorneys in this community. Absent comparator affidavits, we base these blended rates for the Washington attorneys based on what we saw in the Courtroom and studied in Chambers. As to each Washington attorney, we approve hourly rates based on reasonable market rates in this community: Samuel Bryant Davidoff at $550 an hour equal to Attorney Chivers; the associates (other than Attorney Warren) at a blended rate of $300; and, summer associates at $145.

We have no evidence to support finding a paralegal rate in this District of $225 and reduce this rate to $150 equal to the paralegal rate recently advocated by the employees' Pittsburgh counsel in this District for his paralegal Ms. Grass. Employees' counsel swears "case manager" is a title used to describe a senior paralegal in its Washington firm. Curious marketing since courts recognize "paralegal" but we are not aware of a "case manager" – at least until now. We are not second guessing the law firms' marketing nomenclature. We focus on the substance of their work. In closely reviewing their time entries, these persons billing as either paralegals or litigation support are doing work classically understood to be billable as a paralegal. But absent contrary evidence, we will accept the $150 paralegal rate billed by The Employment Rights Group for its paralegal. We recognize Mr. Shanz of Williams & Connolly may be more experienced than other paralegals, but we have no basis to increase his rate above the paralegal rate for Ms. Grass of The Employment Rights Group working in this District. While we agree

10

with Oil States as to non-compensable overhead, the employees have shown us the work and responsibilities of these support persons went far beyond overhead.

### B. Oil States' challenges to billed time.

Oil States raises over thirty challenges to the amount of time billed by the employees' counsel. Some challenges have merit but most want us to second-guess counsel's trial strategies – after those strategies won both trials. We generally will not strike specific time entries or costs or second-guess the amount of time an attorney spends in preparing for court. We are far more skeptical of vague time entries often imbedded in block billing or billing by several lawyers on the same task. Recognizing the issues with block billing, the employees' counsel prudently filed a reply declaration specifically answering the objections.

"[I]n calculating the hours reasonably expended, the district court 'should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[22] We have "a positive and affirmative function in the fee fixing process, not merely a passive role."[23] "A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"[24] "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where documentation of hours is inadequate, the district court may reduce the award accordingly."[25]

### 1. Unnecessary work by The Employment Rights Group.

Oil States challenges the amount of time Pittsburgh counsel spent on researching the effect of the earlier class action, obtaining and reviewing subpoenaed records from Chrysler, preparing for the Kerry Hyde deposition which never occurred, reviewing Oil States' email

11

production and efforts to excuse employees from mediation. Employees' counsel answers each of these challenges with specific reasons and we will not discount billed time because Oil States disagrees with the work effort.

Oil States challenges 111.4 hours it claims involved services for settled plaintiffs. Oil States cites to (1) 14 hours expended by employees' counsel on drafting the class action complaint and pre-discovery discussions with settled employees; (2) 18.7 hours expended on settlement related tasks for "clients" without identifying which clients; and (3) 78.7 hours expended on summary judgment briefing on Brian Kubiak's and Matthew Frick's claims, which settled inclusive of attorney's fees and costs after summary judgment briefing. Oil States argues the employees resolved their claims inclusive of fees and costs and employees' counsel should not recover for hours spent the settled employees' cases. They argue employees' counsel attempted to scrub the settled employees' names from block billed time entries in an effort to recover for time spent developing their claims. Oil States requests we should eliminate the 14 and 18.7 hours. Oil States requests we reduce the total 590.25 hours spent on summary judgment motions for all employees by 78.7 because Mr. Kubiak and Mr. Frick settled their claims after moving for summary judgment. The 78.7 hours reflects a reduction of approximately 13% or 2/15ths of the 590.25 hours because Mr. Kubiak and Mr. Frick are two of fifteen employees who moved for summary judgment.

Employees' counsel argue the time spent on drafting the class action complaint and pre-discovery discussions identifying information needed from Oil States benefited all employees, not just the settled employees. With respect to the 18.7 hours of settlement related tasks leading up to settlement conferences in 2016, employees' counsel again argue the time benefitted all employees, not just settled employees, because all employees attended the settlement

12

conferences. Employees' counsel argues they already excluded time spent on summary judgment briefing related to Mr. Kubiak and Mr. Frick's claims. Employees' counsel argue all time submitted relating to summary judgment briefing benefited all employees as a group.

We agree with the employees on the time billed which benefitted the employees proceeding to trial. Attorney Warren swears the employees are not seeking payment for hours worked for employees who settled before the group one trial or before the group two trial. Oil States' objections to work on the class action complaint and for time on settled claims do not account for the employees' counsel lacking – as we all do - an ability to predict the future. We cannot second guess counsel's strategies in first evaluating a class action claim or in later settling some claims but not others. We overrule Oil States' objections based on work for settled employees or on issues which did not proceed to trial.

## 2. Excessive, duplicative, or unnecessary hours.

Oil States challenges hours expended by employees' counsel which it classifies as excessive, duplicative or unnecessary hours. These hours spread across the entirety of this litigation, including jury instructions, motions *in limine*, trial attendance, legal research, organizing exhibits, discovery, designating deposition testimony, and motion practice.

We review challenged hours to determine whether the hours spent for the work described is reasonable. We exclude all "excessive, redundant, or otherwise unnecessary" hours.[26]

### a. Excessive hours for certain tasks.

Oil States challenges certain of the employees' counsels' hours spent on certain tasks as excessive: (1) 29.75 hours spent researching the effect of a separate settled class action on the employees' ability to proceed as a class should be reduced to 3 hours; (2) 61.25 hours spent requesting and reviewing discovery lacking probative value to the litigation should be reduced to

13

10 hours; (3) 116.55 hours spent compiling deposition designations should be reduced to 25 hours; (4) 194 hours spent on deposition designations after the designation deadline should be reduced to 10 hours; (5) hours spent on motions *in limine* for the group 2 trial totaling $90,000 in fees should be reduced to $20,000; (6) 68.1 hours spent responding to a motion *in limine* should be reduced to 10 hours; (7) 1,150.4 hours spent on trial exhibits should be reduced to 100 hours; and, (8) 336 hours spent on jury instructions should be reduced to 51 hours.

Employees' counsel argues Oil States grossly exaggerates the hours they spent on the tasks and mischaracterizes the work performed. For example, employees' counsel swears they spent approximately 65 hours on deposition designations, not the 310.55 hours claimed by Oil States. Employees' counsel argue Oil States ignores the same entries include hours for several tasks performed. The employees' counsel chose to block bill which fairly raise questions of excessive billing on certain tasks. But the employees' counsel's response to the objections narrows and explains the work in the block billing.

Employees' counsel meets their burden to show the necessity of their efforts. Time spent on reviewing the legal effect of the earlier class action settlement is appropriate. On deposition designations, employees' counsel offers the specifics for the time entries.[27] Similarly, employees' counsel explains the time incurred on motions *in limine,* including time billed by Attorney Hood which facially appears hard to believe but is later explained once we segregate the block billing. We also will not discount time spent on preparing exhibits for trial. No trial attorney can predict the amount of exhibits necessary for the jury. Careful trial lawyers will often include more exhibits than they ever think will reach the jury – the alternative of not including an exhibit is much too risky in a jury trial. We will not discount the specific time billed to preparing jury instructions, particularly in this case involving a developing areas of

14

overtime law. Again, employees' counsel backs off the block billing to specific time spent on jury instructions.

Employees' counsel essentially admits its block billing is not effective in fee-shifting cases as they must now explain their hours, and futilely seek payment of fees for their reply declaration which should have been partially unnecessary if they billed by task rather than block billing.

### b. Unnecessary work or billing.

Oil States challenges employees' counsels' hours for "unnecessary" work: (1) 198.2 hours spent observing trial should be completely eliminated; (2) 559.4 hours spent researching legal issues having no nexus to the litigation should be reduced; and, (3) 34.7 hours spent on a motion for continuance should be reduced to 4.7 hours.

Block billing again causes the problem. Employees' counsel again argue Oil States mischaracterizes the scope of work supporting the hours submitted. They again argue Oil States did not account for the fact time entries describe numerous tasks for the hours submitted. Employees' counsel swear they wrote off time spent by counsel observing trials before submitting their hours for our review.[28]

Employees' counsel specifically defines the time for lawyers in the courtroom which may have become necessary had certain witnesses been called to trial. We see many cases where parties are represented by a "team" of lawyers. We cannot fault trial counsel for streamlining the proofs and not calling witnesses who may become cumulative at trial. Trial counsel also cannot guess her opponent's strategy for trial witnesses and must prepare cross-examination of live witnesses. We do not discount attorney effort because the listed trial witnesses did not

15

testify. Lawyers need to be ready in the room. Neither the judge nor jury may understand a trial lawyer not being ready.

Employees' counsel does not justify some of the time billed to legal research which, from the face of Oil States' declaration, raises questions. We again face block billing and are unable to discern how much of the billed time is allocated to research. But we do not agree with Oil States' requested discount because the research – now with the benefit of hindsight – is unnecessary.

Employees' counsel explains he billed five hours to the motion for a continuance. Again, his block billing now creates extra work for him as he needs to explain his time. But billing five hours for a motion is reasonable.

### c. Vague time entries

Oil States challenges 76.55 hours of time entries as vague. Oil States argues vague entries are inappropriate particularly in this type of litigation with numerous plaintiffs because some employees settled inclusive of costs and attorney's fees. Oil States argues vague entries could be used to hide time spent on settled employees' cases or time used to train junior associates. The challenged time entries include descriptions such as "team meeting," "trial prep," and "update pleadings." Oil States requests we eliminate all 76.55 hours of vague time entries totaling $33,653.50 in fees. Employees' counsel argues the time entries are not impermissibly vague and the time entries reflect hours reasonably spent preparing for trial.

A fee petition must be specific enough to allow us to determine whether the time spent is reasonable for the work performed. [29] "A fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys."[30]

16

We cannot properly evaluate attorney work effort if the attorneys do not fully describe their effort. Vague references to "updating pleadings" or "team meeting" are not sufficient. Neither is "research" a sufficient description. We need to know what the lawyer is doing at least in general terms to assist the case.

We agree with Oil States as to many of the challenged "vague entries." [31] We will not compensate for time described only as "team meeting", "update pleadings", or "trial prep". We grant Oil States' objection in part and deduct $29,433 from the employees' claimed fees.

### 3. Block billed hours.

Oil States challenges 1,727 hours submitted by employees' counsel claiming counsel improperly used the block billing method in keeping time. Oil States challenges most, but not all time entries it characterizes as block billed. The challenged time entries equal $641,800.30. Oil States again argues employees' counsel used block billing methods to hide hours spent on settled cases and unsuccessful claims. Oil States requests we reduce block billed amounts by 35%.

Employees' counsel argues it need not provide exact time amounts for each task they billed. They argue a percentage deductions to block billed entries is not appropriate. To the extent we find improper block billed entries, employees' counsel argue the proper remedy is to provide counsel an opportunity to re-format and re-submit its time entries.

"Block billing is a timekeeping method where lawyers record their daily time for various tasks in one entry, rather than using itemized time entries for each separate task." [32] A fee petition must be specific enough to allow us to determine whether the time spent is reasonable for the work performed. [33] The petition should include "some fairly definite information" regarding hours devoted to activities. [34] However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific

17

attainments of each attorney."[35] Block billing is not an ideal practice, and "lawyers who use it do so at their 'own peril.'"[36] A court may accept a block billed entry "if there is a reasonable correlation between the various activities listed in a block and the time spent completing those tasks."[37]

Employees' counsel cite a non-precedential court of appeals decision in *Simring v. Rutgers* in support of the proposition counsel "must" be afforded an opportunity to re-format and re-submit its bills should the court find any time entries unreasonably block billed.[38] Counsels' reading of *Simring* is wrong. In *Simring*, the court explained it is within a district court's discretion, should the court deem it advisable, to order a fee petitioner to re-submit its block billed time entries.[39] *Simring* does not mandate we provide counsel an opportunity to redo its block billed time entries in a format in line with best practices. It is well settled in our Circuit counsel must keep time using a method which allows us to determine whether counsel spent reasonable hours for the services performed.[40] Counsels' failure to do so does not require we offer her a second chance.

Employees' counsel chose to block bill a fee-shifting case. The daily entries are specific but not separated by task. We reviewed each of the hundreds of entries and they appear related to this representation. Unlike vague instances of block billing on one topic for an extended period, i.e., "trial prep" for 9 hours stricken above, the employees' counsel almost always detail their task. When challenged, employees' counsel now provides sworn specifics as to the time billed. We also accept employees' counsel's sworn statement of striking time allocated to parties not in the case. We see no need for additional forensic examination. The employees' counsel met their burden through their reply declaration.

18

But we will not allow reimbursement for time incurred in meeting this obligation through the reply briefing and declaration. We also caution counsel as to the use of block billing in fee shifting cases where she knows of our obligation to scrutinize the billed time. Grateful clients may pay but we cannot award fees paid by the unsuccessful litigant absent specifics. Employees' counsel barely meets the standard today and we can understand another reasonable judge finding block billing without specifics impermissible *per se* in a fee shifting case. We today overrule Oil States' objection to the block billing.

### 4. Hours spent on clerical tasks.

In addition to hours spent by attorneys, employees' counsel submit hours spent by support staff including summer associates, litigation support analysts, litigation project managers and paralegals. Oil States objects to hours spent by support staff. Oil States argues employees' counsel cannot recover fees for time spent by litigation support staff because they performed clerical non-billable work. Oil States also argues employees' counsel failed to provide supporting documentation regarding the support staffs' experience and qualifications. Oil States also argues employees' counsel spent time on clerical tasks which should be excluded, including 7.5 hours on attempting to excuse certain employees from attending a mediation.

"Work performed by non-bar members may be considered billable when the work product of an attorney relies on those services provided by clerks and paralegals."[41] However, a court may award fees at a reduced rate for performance of clerical tasks.[42] Clerical tasks include "faxing, emailing, filing, scanning, assembling, and conforming."[43]

We carefully reviewed the challenged time entries from paralegals.[44] We agree with Oil States as to the hourly rates for this work and reduce the hourly rate to $150 as reasonable in this community. But the time entries reflect compensable work, such as creating databases,

19

preparing exhibits and working on damages models. This effort is compensable at the reasonable rates for this community.

## 5. Hours spent on damages spreadsheets.

Oil States argues employees' counsel should not recover attorney fees for creating untimely damages models calculating each employees' claimed damages. Oil States argues employees' counsel failed to produce the damages model during discovery and produced the spreadsheets at the eleventh hour before trial. We have addressed Oil States' argument regarding the post-discovery deadline disclosure of the damages model numerous times.[45] We found both Oil States and the employees contributed to the delayed disclosure and the delay did not cause incurable prejudice.[46] Oil States now argues we should reduce the hours spent creating the revised damages spreadsheets. Oil States request we reduce the 516.5 hours spent creating the damages model by 496.5 hours to 20 hours because 20 hours is a reasonable amount of time to spend creating a damages model.

Employees' counsel argues Oil States miscalculated the amount of time they spent creating the damages spreadsheets. Employees' counsel argue the time Oil States cites also incorporates time analyzing Oil States' damages model and calculations and strategizing oppositions to those models and calculations. Employees' counsel also argue they spent a reasonable amount of time on creating the employees' damages model because they needed to create separate models for each of the thirteen individual employees.

Proving and challenging damages became a significant issue as we approached trial and during the jury presentation. We cannot discount or shortchange lawyers who are concerned with proving the maximum amount of damages. It is not our role to substitute our personal

experience in managing cases to second guess lawyers' need to possibly over-prepare. We cannot find the time is excessive.

### 6. Travel time

Oil States, through their Texas counsel, objects to employees' counsels' hours spent traveling from Washington to Pittsburgh. Oil States requests we reduce the 28.7 hours spent travelling to 3.9 hours.

Employees' counsel swear they wrote off all travel hours except for time and costs incurred relating to the last minute continuance of the group two trial due to Oil State's corporate representative's family emergency. We only address attorney's fees here and address employees' counsels' motion for costs below.

"[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel. However, where forum counsel are unwilling to represent the plaintiff, such costs are compensable."[47] If we determine travel costs appropriate, we "must look to the practice in the local community" to determine an appropriate hourly rate for travel time.[48]

Employees' counsel is not seeking payment for its travel time. It seeks payment for time travelling back to Pittsburgh after we postponed a trial due to a medical emergency for Oil States' corporate representative. We will not allow for this travel either. But, we will allow time for the logistics in moving materials from Pittsburgh after the last minute cancellation. We will reduce the requested fees (at the Pittsburgh hourly rates) by $5,835.00 and award $2,100.00 in fees for only the reasonable time to take down the Pittsburgh trial room rendered unnecessary by the requested necessary postponement of the group 2 trial date.

21

### C. Oil States' challenges to billed costs.

In addition to attorney's fees, the Act provides we may award costs to the successful employees.[49] Absent explicit statutory authority or contractual authorization, we are bound by 28 U.S.C. § 1920 defining taxable costs.[50] Employees' counsel seeks costs for transcripts, printing and copying, electronic legal research services, and travel. Oil States objects to travel costs for both attorneys and the employees, costs incurred in the settled employees' cases, and copying costs.

Employees counsel argue the group one and two employees enjoyed the benefit of the transcript and copying costs and the settlement agreements with other employees do not preclude recovery of the costs. Employees' counsel argue travel costs are reasonable here because no local firm wanted to pursue the employees' cases after lead trial counsel moved to Washington. Employees' counsel argue its copying costs and transcript costs are reasonable and necessary for presentation at trial.

#### 1. Travel costs

Oil States objects to employees' counsels' travel costs including hotel, meal, tolls, and parking. Employees' counsel argue travel costs should be paid because employees' lead trial counsel, although located in Washington, is experienced in handling complex trials and held intimate knowledge of the case having acted as lead trial counsel while employed in Pittsburgh.

A party hiring counsel outside the forum of litigation may not seek compensation for travel costs or hours spent travelling unless the party can show local counsel was unwilling to take the case.[51] While Attorney Chivers claims he could not find someone to represent the employees, we do not credit his speculation. We have no basis to find the employees would not have remained with The Employment Rights Group. To the contrary, they did retain Pittsburgh

22

counsel who, according to many cases in this District, is very experienced in wage and overtime claims. No employee offers evidence they would not have remained with Pittsburgh's The Employment Rights Group. But the Washington lawyers did the work and should not be punished by paying out of pocket costs for traveling to mediations, depositions, and trials. They need to pay tolls, rent and park cars and eat something. The lawyers attach receipts resulting in Oil States not challenging the employees' counsel incurring these costs. The expenses are documented and should be awarded.[52]

We agree with Oil States as to charges for hotel war rooms and internet which were used during trial or even scheduled and then cancelled, all of which are provided by local counsel at The Employment Rights Group. We strike $13,780 from the hotel costs for a hotel "war room" in Pittsburgh. The lawyers presumably had a hotel war room at their office in Pittsburgh covered in The Employment Rights Group's overhead. We also agree – as does the employees' counsel – Oil States should not pay for hotel rooms for lawyers who observed the trials. We strike $7,630.12 from the requested reimbursement for those hotel nights. We also strike the undisputed $50 on a hotel bill for pet-sitting.

We disagree with Oil States as to the taxi, tolls, parking and other charges incurred by counsel in attending to this litigation. These are the costs of litigation. Counsel undertaking representation under the Act should not have to pay ordinary incidental costs without reimbursement when their opponent is being paid. We do not want to discourage representation in good cases because we will not aware incidental costs typical of litigation when the lawyers win the case.

23

### 2. Copying costs

Oil States objects to employees' counsels' request for $9,995.99 in copy costs. Oil States argues employees' counsel designated far more exhibits than needed at trial which resulted in unnecessary copying costs. Confusingly, Oil States also argues employees' counsel incurred large copying costs because employees' counsel "played games with exhibits" by shuffling exhibits immediately before the group two trial and failing to include certain pages in exhibit binders. Oil States argues a 50% reduction is necessary because employees' counsel over-designated exhibits.

We disagree with Oil States and find the copying costs are appropriate.

### 3. Costs associated with settled employees

Oil States objects to $13,632.59 in transcript, service, and video recording costs. Oil States argues a portion of these costs should be reduced because a portion of these costs benefited settled employees. Oil States requests a nearly 50% reduction because 14 of 29 employees settled their cases inclusive of costs. Oil States request we reduce these fees to $6,581.25.

Employees' counsel argue all plaintiffs benefitted from these services and describe the costs necessary for trial. We agree with the employees. The employees proceeding to trial – and their lawyers – could not have known who would settle before trial when they incurred the copying charges. These are reasonable and expected costs of complex litigation.

## III. Conclusion

The lawyers on all sides performed well and should be paid a reasonable rate for the reasonable hours incurred for their clients. The employer's counsel relies on their contracted negotiated rate to get paid. The employees, having persuaded a jury of their right to overtime pay under the Act, now ask us to award them reasonable attorney's fees and costs for their efforts. After arduous scrutiny of hundreds of pages of time sheets and objections, we enter the attached Order granting the employees' motion in large part but denying their request to bill attorneys at Washington D.C. hourly rates and for limited hours which the lawyers did not specify their effort. We award reasonable attorney's fees of $2,263,904.50 and reasonable costs of $118,826.61.

---

[1] ECF Doc. No. 201.

[2] ECF Doc. No. 206. *See also* ECF Doc. No. 507-4, ¶4.

[3] ECF Doc. No. 507-4, ¶ 17.

[4] *Id.*

[5] We understand, as described by Attorney Chivers, the hesitancy of other lawyers willing to jump into his individual wage payment cases after summary judgment given the necessary investment of time to catch-up on the facts. But Attorney Chivers undertook this representation before Attorney Warren became lead counsel and we would expect he would continue the representation. Attorney Warren properly kept his same hourly rate but, in bringing along his Washington colleagues, he should have been mindful of the reasonable rates here.

[6] ECF Doc. Nos. 207, 209.

[7] ECF Doc. No. 224.

[8] 29 U.S.C. § 216(b).

[9] *Loughner v. Univ. of Pitts.*, 260 F.3d 173, 177 (3d Cir. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

25

[10] *Id.*

[11] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[12] *Id.* (citing *Hensley*, 461 U.S. at 433).

[13] *Id.* (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989)).

[14] *Id.* (citing *Bell*, 884 F.2d at 720).

[15] *Id.* (citing *Bell*, 884 F.2d at 721).

[16] *Clemens v. New York Central Mutual Fire Insurance Co.*, --F.3d --, No. 17-3150, 2018 WL 4344678, at *3 (3d Cir. Sept. 12, 2018)(quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)(internal quotations omitted).

[17] *Loughner*, 260 F.3d at 180 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[18] *Id.* (citing *Rode*, 892 F.2d at 1183).

[19] *Id.* (quoting *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)).

[20] *Lanni v. N.J.*, 259 F.3d 146, 150 (3d Cir. 2001) (citing *Rode*, 892 F.2d at 1188-89).

[21] *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 226 (3d Cir. 1997).

[22] *Loughner*, 260 F.3d at 178 (quoting *Pub. Interest Research Grp. Of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

[23] *Id.*

[24] *Rode*, 892 F.2d at 1190 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).

[25] *Hensley*, 461 U.S. at 433.

[26] *Loughner*, 260 F.3d at 178 (quoting *Pub. Interest Research Grp. Of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

[27] ECF Doc. No. 511-1, ¶ 15.

[28] *Id.*, ¶ 21.

[29] *Rode*, 892 F.2d at 1190 (quoting *Pawlak*, 713 F.2d at 97).

[30] *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992).

[31] ECF Doc. No. 510-1, Attachment 22.

[32] *Shihee Donvell Hatchett v. Cnty. of Phila.*, No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010) (citation omitted).

[33] *Rode*, 892 F.2d at 1190 (quoting *Pawlak*, 713 F.2d at 978).

[34] *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Std. Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

[35] *Id.*

[36] *Shihee Donvell Hatchett*, at *4.

[37] *Id.*

[38] 634 F. App'x 853 (3d Cir. 2015).

[39] *Id.* at 859 n.2.

[40] *Rode*, 892 F.2d at 1190 (quoting *Pawlak*, 713 F.2d at 978).

[41] *Brown v. City of Pittsburgh*, No. 06-393, 2010 WL 2207935, at *10 (W.D. Pa. May 27, 2010) (citing *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989)).

[42] *Id.*

[43] *Id.*

[44] ECF Doc. No. 510-1.

[45] ECF Doc. No. 237; ECF Doc. No. 512 at p. 20.

[46] ECF Doc. No. 237.

[47] *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710-11 (3d Cir. 2005).

[48] *Id.* (quoting *Planned Parenthood of Cent. N.J. v. Attorney General of State of N.J.*, 297 F.3d 253, 267-68 (3d Cir. 2002)).

[49] 29 U.S.C. § 216(b).

[50] *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

[51] *Interfaith Cmty. Org.*, 426 F.3d at 710-11.

[52] *Watcher v. Pottsville Area Emergency Medical Service, Inc.*, 559 F.Supp.2d 516, 538 (M.D.Pa. 2008).